## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND   :
ETHICS IN WASHINGTON               :
1400 Eye Street, N.W., Suite 450       :
Washington, D.C. 20005            :
                                :
       Plaintiff,             :
                                :
       v.                  :   Civil Action No._____
                                :
U.S. DEPARTMENT OF VETERANS   :
AFFAIRS,                         :
810 Vermont Avenue, N.W.        :
Washington, D.C.  20420          :
                                :
       Defendant.          :
                                :

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, as well as agency FOIA regulations, challenging the failure of the United States Department of Veterans Affairs ("VA"), to fulfill the request of Citizens for Responsibility and Ethics in Washington ("CREW") for documents relating to guidance regarding the diagnosis of post traumatic stress disorder ("PTSD") in veterans.

2.  This case seeks declaratory relief that defendant is in violation of the FOIA for failing to fulfill plaintiff's request for records, in violation of the FOIA and agency regulations for failing to grant plaintiff's request for a waiver of fees and injunctive relief that defendant immediately and fully comply with plaintiff's request under the FOIA.

## JURISDICTION AND VENUE

3.  This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction

over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C.

§ 552(a)(4)(B).

4. Plaintiff CREW is a non-profit corporation, organized under section 501(c)(3) of the

Internal Revenue code. CREW is committed to protecting the right of citizens to be informed

about the activities of government officials and to ensuring the integrity of those officials.

CREW seeks to empower citizens to have an influential voice in government decisions and in the

governmental decision-making process through the dissemination of information about public

officials and their actions. To advance its mission, CREW uses a combination of research,

litigation and advocacy. As part of its research, CREW uses government records made available

to it under the FOIA.

5. CREW has invested considerable organizational resources in pushing the U.S.

government to take ethics issues seriously. CREW monitors closely the laws and rules

applicable to government agencies.

6. CREW is harmed by the VA's failure to comply with the FOIA because that failure

harms CREW's ability to provide full, accurate and current information to the public on a matter

of public interest. 5 U.S.C. § 552(a)(6)(c). Absent this critical information, CREW cannot

advance its mission of educating the public to ensure that the public continues to have a vital

voice in government decisions.

7. CREW will analyze the information it receives that is responsive to its request and

will share it with the public through memoranda, reports, or press releases. In addition, CREW

will disseminate any documents it acquires from its request to the public through an interactive

website that CREW has founded, www.governmentdocs.org, where members of the public can

analyze and comment on public documents.  CREW's own website, www.citizensforethics.org,

contains links to thousands of pages of documents CREW has acquired from multiple FOIA

requests as well as documents relating to CREW's FOIA litigation.

8.  Defendant VA is an agency within the meaning of 5 U.S.C. § 552(f).  Defendant is the

federal agency with possession and control of the requested records and is responsible for

fulfilling CREW's FOIA request.

## STATUTORY FRAMEWORK

### The Freedom of Information Act

9.  The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release

requested records to the public unless one or more specific statutory exemptions apply.

10.  An agency must respond to a party making a FOIA request within 20 working days,

notifying that party of at least the agency's determination whether or not to fulfill the request and

of the requester's right to appeal the agency's determination to the agency head.  5 U.S.C.

§ 552(a)(6)(A)(i).

11.  An agency must respond to a FOIA appeal within 20 working days, notifying the

appealing party of the agency's determination to either release the withheld records or uphold the

denial.  5 U.S.C. § 552(a)(6)(A)(ii).

12.  In "unusual circumstances," an agency may delay its response to a FOIA request or

appeal, but must provide notice and must also provide "the date on which a determination is

expected to be dispatched."  5 U.S.C. § 552(a)(6)(B).

13.  The FOIA also requires each agency to promulgate regulations specifying a fee

3

schedule for the processing of FOIA requests and establishing procedures and guidelines for the

waiver or reduction of fees.  5 U.S.C. § 552(a)(4)(A).  Defendant VA's fee waiver regulations are

found at 38 C.F.R. § 1.555.  Under the FOIA, agencies should produce documents at no charge to

the requester or at a reduced charge if "disclosure of the information is in the public interest

because it is likely to contribute significantly to public understanding of the operations or

activities of the government and is not primarily in the commercial interest of the requester."

5 U.S.C. § 552(a)(4)(A)(iii).

14.  This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from

withholding agency records and to order the production of any agency records improperly

withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).

15.  The FOIA provides a mechanism for disciplinary action against agency officials who

have acted inappropriately in withholding records.  Specifically, when requiring the release of

improperly withheld records, if the court makes a written finding that "the circumstances

surrounding the withholding raise questions whether agency personnel acted arbitrarily or

capriciously," a disciplinary investigation is triggered.  5 U.S.C. § 552(a)(4)(F).

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

16.  On May 14, 2008, CREW sent a FOIA request to the VA seeking documents relating

to the diagnosis of PTSD in veterans.  Letter from Anne L. Weismann, CREW, to Department of

Veterans Affairs, FOIA/Privacy Act (May 14, 2008) (attached as Exhibit 1).  Specifically,

CREW requested records "from January 1, 2001, to the present relating to any and all guidance

given to any VA staff, consultants and/or other recipient(s) of federal funds regarding the

diagnosis of post traumatic stress disorder . . . in veterans."  Id.  CREW's request includes, but is

4

not limited to, "guidance on (1) whether or not to make a diagnosis of PTSD; (2) alternative diagnoses that should or could be made in lieu of diagnosing PTSD; (3) time or expense factors bearing on a diagnosis of PTSD; and (4) guidance on PTSD diagnoses as they relate to veteran appeals." Id. CREW also requested a waiver of fees associated with the processing of its request. Id. at 2-3.

17. On May 28, 2008, following a telephone conversation between CREW's counsel and Lizzette Katilus of the VA, CREW sent a letter memorializing the conversation and expressing CREW's concerns with the manner in which the VA is handling CREW's FOIA request. Letter from Anne L. Weismann to Lizzette Katilus (May 28, 2008) (attached as Exhibit 2). Specifically, CREW voiced its concerns with the VA's position that VA regulations require the agency to search only central offices and pointed out that the plain language of the VA regulations does not support this limitation. Id. at 1. CREW also noted the VA's refusal to give CREW any guidance on which offices are likely to have responsive records and the agency's position that "it was up to CREW to narrow its request, with no input or guidance from the VA." Id. at 2. Finally, CREW noted the VA's statement that it was going to deny CREW's request for a fee waiver. Id.

18. By letter dated June 5, 2000, the VA denied CREW's request for a fee waiver and also claimed the request was "overly broad" and imposed on the VA "an extremely burdensome search effort." Letter from John Livornese, Director of Records Management Service, Department of Veterans Affairs, to Anne L. Weismann (June 5, 2008) (attached as Exhibit 3).

19. By letter dated June 10, 2007, CREW appealed administratively each of these determinations and requested that the VA immediately grant CREW a fee waiver and process the

request. Letter from Anne L. Weismann to General Counsel Office, Department of Veterans Affairs (June 10, 2008) ("Appeal Letter") (attached as Exhibit 4). CREW explained how it readily met each of the requirements for a fee waiver.

20. First, the VA's determination that the records CREW seeks "would not be meaningfully informative" because of the "congressional and media attention" that the diagnosis of PTSD in veterans has already received ignores the abundant evidence that "the records CREW seeks are very much in the current interest of a large segment of the public." Id. at 1-2.

21. Second, the VA's initial determination that the request is so broadly worded as to include irrelevant records "contort[s] the subject matter of CREW's request beyond all reason . . ." Id. at 2. And the VA's conclusion that the request is so overly broad as to place an undue burden on the agency goes beyond the FOIA requirement that a request "reasonably describe" the records being sought. Id. at 3.

22. As of the filing of this complaint, the VA has neither responded to CREW's administrative appeal nor produced any documents to CREW in response to CREW's May 14, 2008 request.

23. CREW has now exhausted its administrative remedies with respect to the processing of CREW's FOIA request. See, e.g., Judicial Watch v. Rossoti, 326 F.3d 1309, 1310 (D.C. Cir. 2003) citing 5 U.S.C. § 552(a)(6)(C).

**PLAINTIFF'S CLAIMS FOR RELIEF**

**<u>CLAIM ONE</u>**
**(Failure to Produce Records Under the FOIA)**

24. Plaintiff realleges and incorporates by reference all preceding paragraphs.

6

25. Plaintiff properly asked for records within the VA's control.

26. Plaintiff is entitled by law to access to the records requested under the FOIA, unless defendant makes an explicit and justified statutory exemption claim.

27. The VA has produced no records to CREW.

28. Therefore, the VA violated FOIA's mandate to release agency records to the public by failing to release the records as plaintiff specifically requested. 5 U.S.C. §§ 552(a)(3)(A), 552(a)(4)(B).

## CLAIM TWO
### (Improper Denial of Fee Waiver)

29. Plaintiff realleges and incorporates by reference all preceding paragraphs.

30. Plaintiff has demonstrated that it is entitled to a waiver of fees associated with processing its FOIA request because disclosure of responsive records will likely contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the plaintiff.

31. Therefore, defendant violated the FOIA and defendant's own regulations when it failed to grant CREW a fee waiver. 5 U.S.C. § 552(a)(4)(A)(iii); 38 C.F.R. § 1.555.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

(1) Declare that the VA has violated the Freedom of Information Act by failing to lawfully satisfy plaintiff's FOIA request of May 14, 2008;

(2) Order the VA to release immediately all records responsive to plaintiff's FOIA request;

7

(3) Declare that the VA violated the Freedom of Information Act and agency regulations when it determined that plaintiff is not entitled to a waiver of all fees associated with the processing of its FOIA request and declare that plaintiff is entitled to a fee waiver;

(3) Award plaintiff its reasonable attorney fees and litigation costs in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(4) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and
 Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Fax: (202) 588-5020

Daniel S. Alcorn
(D.C. Bar No. 383267)
9024 Belcourt Castle Place
Great Falls, VA  22066
Phone:  (703) 759-2816

August 27, 2008                          Attorneys for Plaintiff

## CIVIL COVER SHEET

JS-44
(Rev. 2/01 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Citizens for Responsibility and Ethics in Washington | U.S. Department of Veterans Affairs |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __11001__ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __11001__ (IN U.S. PLAINTIFF CASES ONLY) NOTE: In land condemnation cases, use the location of the tract of land involved. |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Anne L. Weismann<br>Citizens for Responsibility and Ethics in Washington<br>1400 Eye Street, N.W., Suite 450<br>Washington, D.C. 20005<br>202-408-5565 | |

**II BASIS OF JURISDICTION** (SELECT ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** ( FOR DIVERSITY CASES ONLY!) (SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. Habeas Corpus/2255 | ○ H. Employment Discrimination | ⊙ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national<br>origin, discrimination, disability, age,<br>religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |
| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

**V. ORIGIN**
⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
5 USC sec. 552. U.S. Dept' Veterans Affairs has failed to produce records in response to plaintiff's FOIA request and to grant plaintiff a fee waiver.

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Select YES only if demanded in complaint    JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES ☒ NO    If yes, please complete related case form.

DATE  8/27/08        SIGNATURE OF ATTORNEY OF RECORD _____

---

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**EXHIBIT 1**



May 14, 2008

**By First Class Mail and Fax (202-273-0443)**

Department of Veterans Affairs
FOIA/Privacy Act
810 Vermont Avenue, NW
Washington, DC 20420

Re: Freedom of Information Act Request

Dear Sir/Madam:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, audiotapes, videotapes and photographs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, et seq.

Specifically, CREW seeks from the U.S. Department of Veterans Affairs ("VA"), any and all records from January 1, 2001, to the present relating to any and all guidance given to any VA staff, consultants and/or other recipient(s) of federal funds regarding the diagnosis of post traumatic stress disorder ("PTSD") in veterans. This request includes, but is not limited to, any and all records that reflect or contain guidance on (1) whether or not to make a diagnosis of PTSD; (2) alternative diagnoses that should or could be made in lieu of diagnosing PTSD; (3) time or expense factors bearing on a diagnosis of PTSD; and (4) guidance on PTSD diagnoses as they relate to veteran appeals. As used herein, "guidance" includes both formal and informal guidance, advice, recommendations, both formal and informal, no matter how memorialized. Please note that we are not seeking records about individual veterans or individual veteran applications for benefits.

Please search for responsive records regardless of format, medium, or physical characteristics. Where possible, please produce records electronically, in PDF or TIF format on a CD-ROM. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure,

CREW requests that you provide it with an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the Vaughn index must "describe each document or portion thereof withheld, and for **each** withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

### Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and VA regulations, 38 C.F.R. § 1.555, CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and expenditures, and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the extent to which the VA has instructed or encouraged doctors and other health professionals involved in evaluating, assisting or reviewing claims of veterans seeking compensation from the VA to refrain from making or supporting a diagnosis of PTSD.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not

in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases. In addition, CREW will disseminate any documents it acquires from this request to the public. CREW has established an interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA. See www.governmentdocs.org. Currently, this website contains links to thousands of pages of documents CREW and other organizations acquired from multiple FOIA requests. CREW's own website, www.citizensforethics.org, also includes documents relating to CREW's FOIA litigation, Internal Revenue complaints, and Federal Election Commission complaints. As CREW's website demonstrates, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

## Conclusion

If you have any questions about this request or foresee any problems in releasing fully the requested records, please contact me at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Anne L. Weismann, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

Anne L. Weismann
Chief Counsel

3

**EXHIBIT 2**

# CREW | citizens for responsibility and ethics in washington

May 28, 2008

**By First Class Mail and Fax (202-273-0443)**

Lizzette Katilius
Department of Veteran Affairs
FOIA/Privacy Act
810 Vermont Avenue, N.W.
Washington, D.C. 20420

**Re: May 14, 2008 Freedom of Information Act Request**

Dear Ms. Katilius:

I write to memorialize our conversation of this morning and to express my concern with the manner in which the Department of Veteran Affairs ("VA") is handling CREW's Freedom of Information Act ("FOIA") request of May 14, 2008.

On May 14, 2008, CREW submitted to the VA a FOIA request seeking all guidance given to any VA staff, consultants and/or other recipients of federal funds regarding the diagnosis of post traumatic stress disorder ("PTSD") in veterans. CREW also specified categories of records that fall within its request. In addition, CREW sought a waiver of fees.

Today you advised me that the VA would not search any field offices because, according to you, VA regulations require the VA to search only central offices. Your representation about what VA FOIA regulations require, however, is not supported by the plain language of those regulations or any of the FOIA guidance posted on VA's website, www.va.gov.

VA regulations at 38 C.F.R. § 1.553 provide in relevant part as follows:

> The request should be made to the office concerned (having jurisdiction of the record desired) or, if not known, to the Director or Veterans Services Officer in the nearest VA regional office . . . *or to the Department of Veterans Affairs Central Office, 810 Vermont Avenue, N.W., Washington, DC 20420 . . .*

(emphasis added). Given that the regulations clearly authorize filing a FOIA request with the VA Central Office as an alternative to filing it with a regional office filing and given that CREW directed its FOIA request to the VA Central Office, your suggestion that the VA now has no obligation to search any of its regional offices in response to CREW's request is completely unfounded.

This conclusion is reinforced by the guidance VA offers on its website. Under the heading "Where to Make a FOIA Request," the VA explains that it is divided into three administrations (the Veterans Health Administration, the Veterans Benefits Administration and the National Cemetery Administration). Further, the website states that "[i]f you know the office that maintains the records you are seeking, you should write to that office or contact the <u>VA Central Office FOIA/Privacy Act Officer</u> for the custodian of the record." (emphasis in original), Where, however a requester does not know the office that maintains the records the requester is seeking, the website provides directions for five categories of documents: medical records, national cemetery records, other benefits records, Inspector General records, and "all other records." Requesters seeking records falling into this last category -- the category that best captures CREW's request -- are directed to make their request of VA headquarters, precisely what CREW did here.

Second, you stated that within headquarters there are 30 different offices, at least some of which are unlikely to have any of the records CREW seeks. You were unwilling, however, to provide me any guidance as to which offices are unlikely to have records and stated instead that it was up to CREW to narrow its request, with no input or guidance from the VA. Your refusal to offer any guidance is completely at odds with an agency that claims to be diligently attempting to comply with its statutory requirements under the FOIA.

Finally, you stated that CREW's request for a fee waiver would be denied, with no explanation of the basis for such a denial. Given the record, which amply supports CREW's request for a fee waiver, the fact that CREW is almost always granted a fee waiver and the VA's failure to articulate any basis for its anticipated fee waiver denial, we can only conclude that the VA is attempting to evade its responsibilities under the FOIA and keep the public from learning about the true extent to which the VA has encouraged alternative diagnoses to avoid the costs associated with a diagnosis of PTSD.

CREW remains willing to narrow its FOIA request appropriately based on any guidance the VA can provide. The records we seek are critical to the public in understanding the emerging scandal regarding how the U.S. government has treated veterans and service members who have fought so bravely for our country, only to be denied proper treatment for the mental health injuries they have suffered as a result of their service.

Sincerely,


Anne L. Weismann
Chief Counsel

2

**EXHIBIT 3**



**DEPARTMENT OF VETERANS AFFAIRS**
Washington DC 20420

JUN / 5 2008

<u>Via Certified Mail (70051820000234103956)</u>
Ms. Anne L. Weismann
Chief Counsel
Citizens for Responsibility and Ethics in Washington (CREW)
1400 Eye Street, NW, Suite 450
Washington, DC 20005

Dear Ms. Weismann:

Thank you for your May 14, 2008, Freedom of Information Act (FOIA) request to the Department of Veterans Affairs (VA) in which you requested:

"any and all records from January 1, 2001, to the present relating to any and all guidance given to any VA staff, consultants and/or other recipient(s) of federal funds regarding the diagnoses of post traumatic stress disorder ("PTSD") ill veterans. This request includes, but is not limited to, any and all records that reflect or contain guidance on (1) whether or not to make a diagnosis of PTSD; (2) alternative diagnoses that should or could be made in lieu of diagnosing PTSD; (3) time or expense factors bearing on a diagnosis of PTSD; and (4) guidance on PTSD diagnoses as they relate to veteran appeals. As used herein, "guidance" includes both formal and informal guidance, advice, recommendations, both formal and informal, no matter how memorialized."

With respect to your request:

1. The Records Management Service (RMS) received your request on May 14, 2008, and assigned it FOIA number 08-7908. Please refer to this number when communicating with this office about your FOIA request. Under our regulations, 38 C.F.R. § 1.553(b), a request should be made to the office having jurisdiction of the records desired. Accordingly, any records search pursuant to this request would include the records maintained in Central Office only.

2. We have classified you as an "other-use" requester. This means that you are entitled to the first two hours of search time and the first 100 duplicated pages free of charge before the agency can begin assessing processing fees.

Page 2

### 3. Fee Waiver Request

In your request you asked for a waiver of FOIA processing fees. In determining whether a fee waiver is warranted, the agency must analyze whether the disclosure of the information requested is in the public interest because it is likely to contribute significantly to the public's understanding of the operations or activities of the Government. In doing so, we ask:

> (1) Whether the subject of the requested records concerns the operations or activities of the government.

We have determined that the records you requested satisfy this first element.

> (2) Whether the disclosure is "likely to significantly contribute to the public's understanding.

In assessing whether the disclosure is likely to contribute to public understanding of Government operations or activities, the Department must determine if the contents of the requested records are meaningfully informative regarding the operations or activities of the Government.

In support of your fee waiver request you assert the requested records "are likely to contribute to the public's understanding of the extent to which the VA has instructed or encouraged doctors and other health professionals . . . to refrain from making or supporting a diagnosis of PTSD." However, the justification you provided is insufficient to justify granting you a fee waiver. The records you requested would not be meaningfully informative to the subject of your request, for the reasons explained below. First, the subject of your request is a matter that has received congressional and media attention for at least a year. In July 2007, a class action lawsuit was filed against the Department of Veterans Affairs wherein it was alleged the VA deliberately misclassified PTSD to avoid paying benefits.[1] Consequently, the subject of your request is a matter that has already reached the public domain and any records on this subject would not reveal anything new.

In addition, your request is so broadly worded that responsive records would include documents that have no relevance to the activity you allege. For example, items 1 and 2 would encompass records that shed no light on "the extent to which the VA has instructed . . .doctors . . . to refrain from making or supporting a diagnosis of PTSD," (such documents could include a physician's notes regarding making or not making a diagnosis of PTSD that would not necessarily be attributable to any guidance other than the health care provider's own medical opinion). These types of documents would not be evidence of the activity you allege and would not support your request for a fee waiver.

---

[1] Veterans For Common Sense et al. v. Peake, Case No. C 07 3758, U.S.D.C. (N.D. Cal. 2007)

Page 3

*Based on the information provided in your letter, your fee waiver request is denied.* However, we will reconsider this decision if you provide additional information to justify your fee waiver request.  Use the factors above as a guide.

4.  Scope of Request

According to our regulations, a request for records "must contain a reasonable description of the record desired so that it may be located with relative ease."  See 38 C.F.R. §1.553(b).  Your request, as written, is overly broad and would impose upon the Department of Veterans Affairs' (VA) limited resources an extremely burdensome search effort.  Please be aware that the VA is a highly decentralized agency, consisting of approximately 240,000 employees that are located in hundreds of offices all over the country.  Without reference to specific offices or individuals we cannot know how to search for records responsive to your request.

Additionally, portions of your request need to be clarified before we can know where to search for responsive records:  in item 3 of your request ("time or expense factors bearing on a diagnosis of PTSD"), it is not at all clear what you are asking for.  Are you requesting records related to the amount of clinician time that is involved when making a diagnosis of PTSD; the amount of time it takes to perform a medical exam designed to identify PTSD; the cost of treating someone diagnosed with PTSD, or perhaps something other than the examples we have provided?  Similar issues arise with respect to Item 4 of your request ("guidance on PTSD diagnoses as they relate to veteran appeals"); there are multiple ways this item could be understood.  For instance, are you referring to clinical appeals or do you mean benefits appeals processed by VBA and/or BVA?  Are you asking for records about assistance given to appellants claiming PTSD because they need special assistance or are you asking for records related to adjudication rules related to PTSD?

In an effort to assist you in narrowing the scope of your request, it may be helpful to you to know that a diagnosis of PTSD or an alternative diagnosis are decisions made by physicians.  Therefore, it is possible that the Veterans Health Administration would have records on this subject.  Also, depending on the nature of the "time or expense factors" in the subject of your request, the Compensation and Pension Service within the Veterans Benefits Administration and the Office of Management may have responsive records.

5.  For the reasons explained above, further clarification is needed regarding the scope and subject of your request before we can know how to begin to process this request.  If we do not hear back from you within 20 days of receiving this letter, we will assume you are no longer interested in pursuing your request and will close our files on it.

6.  If you decide to pursue your request such that processing your request would require searching multiple offices and/or collecting a voluminous amount of records, please be advised we will take a ten-working day time extension to process your request.

Page 4

7. If you disagree with any of the decisions discussed in this letter, you may file an appeal with the Office of General Counsel at the address below. If you decide to appeal this response, please include a copy of this letter with your appeal and indicate why you disagree with the response. You should send your appeal to:

> General Counsel Office (024)
> Department of Veterans Affairs
> 810 Vermont Avenue, N.W.
> Washington, D.C. 20420

We appreciate your interest in the Department of Veterans Affairs. Customer service is very important to us. If you have questions about this letter, please contact Ms. Gesla Nwankpa of my staff at (202) 461-7464 and refer to FOIA number 08-7908.

Sincerely,

John Livornese, Director
Records Management Service

**EXHIBIT 4**



CREW | citizens for responsibility and ethics in washington

June 10, 2008

General Counsel Office (024)
Department of Veterans Affairs
810 Vermont Avenue, N.W.
Washington, D.C. 20420

**Re: FOIA Number 08-7908**

Dear Sir/Madam:

By letter dated June 5, 2008 (and post-marked June 6, 2008), John Livornese, Director of Records Management Service at the Department of Veterans Affairs ("VA"), advised Citizens for Responsibility and Ethics in Washington ("CREW") that our request for a waiver of fees associated with processing the above-referenced Freedom of Information Act ("FOIA") request has been denied. In addition, according to Mr. Livornese, CREW's request is "overly broad and would impose upon the . . . (VA) . . . an extremely burdensome search effort." A copy of his letter is attached as Exhibit 1. For the reasons set forth below, CREW hereby appeals both of these determinations and requests that the VA immediately grant CREW a fee waiver and process the request and produce all non-exempt documents within 20 days, as the FOIA requires.

By way of background, CREW's request seeks:

all records from January 1, 2001, to the present relating to any and all guidance given to any VA staff, consultants and/or other recipient(s) of federal funds regarding the diagnosis of post traumatic stress disorder ("PTSD") in veterans. This request includes, but is not limited to, any and all records that reflect or contain guidance on (1) whether or not to make a diagnosis of PTSD; (2) alternative diagnoses that should or could be made in lieu of diagnosing PTSD; (3) time or expense factors bearing on a diagnosis of PTSD; and (4) guidance on PTSD diagnoses as they relate to veteran appeals.

A complete copy of CREW's FOIA request is enclosed as Exhibit 2.

The grounds proffered by the VA for denying CREW a fee waiver do not stand up to the slightest degree of scrutiny. First, Mr. Livornese determined that the records CREW seeks "would not be meaningfully informative to the subject of your request," in part because that subject "has received congressional and media attention for at least a year," and accordingly "any records on this subject would not reveal anything new." This finding ignores reality.

Just last week the Senate Committee on Veterans' Affairs held a hearing on the "Systemic Indifference to Invisible Wounds" displayed by the VA in its purposeful under-diagnosis of PTSD. This hearing was promoted by, in the words of Committee Chairman Daniel Kahikina Akaka, "*[r]ecent* events at the Temple VA Medical Center," which "have raised concerns about the Department's dedication to the mental health needs of our returning servicemembers." Opening Statement of Chairman Akaka (emphasis added) (attached as Exhibit 3). Those events include the recent disclosure by CREW and VoteVets.org of an email sent by a VA employee that "link[s] the increase in veterans seeking compensation for PTSD with a desire to assign a lesser diagnosis of adjustment disorder . . ." Id. Of note, this email (attached as Exhibit 4) was prepared and sent long after the filing of the class action lawsuit referenced in Mr. Livornese's letter as the event that marks the end point for any further contribution to the public's understanding of this issue.

As this evidence makes clear, the records CREW seeks are very much in the current interest of a large segment of the public. Should there be any doubt, the enclosed representative sampling of news articles issued during the last month (Exhibit 5) illustrates the high degree to which this issue continues to capture the public's interest. When coupled with the recent revelation of the email that prompted last week's congressional hearing, there can be no doubt that, contrary to the VA's initial finding, there is much new material still to be uncovered and each further revelation about the VA's abhorrent practices will only enhance the public's interest.

Moreover, Mr. Livornese's conclusion is fatally deficient for the separate reason that he has failed to identify where, if at all, the detailed information that CREW seeks is already in the public domain. It is not enough that the general subject of CREW's FOIA request has already been in the public domain; a proper fee waiver denial must rest on a demonstration that *the records CREW seeks* are already in the public domain. See CREW v. U.S. Dep't of Health and Human Services, 481 F.Supp.2d 99, 111 (D.D.C. 2006), *quoting* Carney v. U.S. Dep't of Justice, 19 F.3d 807, 815-16 (2d Cir. 1994) (rejecting objections to fee waiver where agency "merely stated that the records [plaintiff] requested had been released to other requesters without explaining how these records were readily available to the public.").

Second, Mr. Livornese denied CREW's fee waiver request on the ground that it "is so broadly worded that responsive records would include documents that have no relevance to the activity you allege." To reach this conclusion Mr. Livornese contorted the subject matter of CREW's request beyond all reason by suggesting that, as worded, CREW's request properly would encompass "a physician's notes . . . that would not necessarily be attributable to any guidance other than the health care provider's own medical opinion."

This interpretation cannot be squared with the plain meaning of CREW's FOIA request. First, as the request makes express, CREW is "not seeking records about individual veterans or individual veteran applications for benefits." Accordingly, an individual physician's notes providing his or her own medical opinion would not properly be within the scope of that request.

2

Second, CREW's request seeks "*guidance* given to any VA staff, consultants and/or other recipient(s) of federal funds *regarding the diagnosis of post traumatic stress disorder ("PTSD") in veterans . .*" (emphasis added). As worded, the request clearly seeks records that are relevant to "the extent to which the VA has instructed or encouraged doctors and other health professionals involved in evaluating, assisting or reviewing claims of veterans seeking compensation from the VA to refrain from making or supporting a diagnosis of PTSD," -- the justification CREW proffered for its fee waiver request.

In sum, the VA's initial justification for denying CREW a fee waiver is contrary to all of the evidence and rests on a contorted misconstruction of CREW's FOIA request. The only legitimate conclusion that can be drawn from the patently defective basis of that denial is that the VA seeks to evade public accountability for its actions in direct contravention of the FOIA and the purposes for which the FOIA was enacted.

Mr. Livornese's conclusion that CREW's request is overly broad and places an undue burden on the VA is equally without merit. It cannot seriously be disputed that, as the FOIA requires, CREW's request "reasonably describes" the records CREW seeks. 5 U.S.C. § 552(a)(3)(A)(I). Nothing in the FOIA requires CREW to go further and identify "specific offices or individuals," as Mr. Livornese's letter suggests. Indeed, Mr. Livornese's further suggestion that the Veterans Health Administration, the Veterans Benefits Administration and the Office of Management "may have responsive records," amply illustrates the sufficiently narrow and specific nature of CREW's request.

Mr. Livornese has also raised questions about the scope of CREW's request that reflect a seemingly purposeful attempt to misconstrue CREW's request. CREW's reference to "time or expense factors bearing on a diagnosis of PTSD" relates directly to advice that the VA has given about the need to avoid the costs of a PTSD diagnosis. For example, the recently released email states in pertinent part: "Given that we are having more and more *compensation seeking* veterans, I'd like to suggest that you refrain from giving a diagnosis of PTSD straight out," and continues "*we really don't or have time* to do the extensive testing that should be done to determine PTSD." (emphasis added). Item 4 of CREW's request, the scope of which Mr. Livornese also challenged, is equally clear. CREW seeks any and all "guidance on PTSD diagnoses as they relate to veteran appeals." As such, contrary to Mr. Livornese's suggestion, CREW is not seeking "assistance given to appellants claiming PTSD," except to the extent such "assistance" qualifies as "guidance on PTSD diagnoses as they relate to veteran appeals." Likewise, only to the extent that "clinical appeals" or "benefits appeals processed by VBA and/or BVA" constitute "guidance on PTSD diagnoses as they relate to veteran appeals," would they fall within the scope of CREW's request. Clearly what is called for is a more careful reading of CREW's request by the VA, not further clarification from CREW.

Finally, we note that in a follow-up letter of May 28, 2008 to Lizzette Katilius (attached as Exhibit 6), to which Mr. Livornese made no reference, CREW indicated its willingness to narrow its FOIA request "appropriately based on any guidance the VA can provide." Rather than

3

engage in a dialogue with CREW, the VA instead has erected straw arguments and interpretations that fly in the face of common-sense. Nevertheless, CREW remains willing to narrow its request should the VA see fit to offer meaningful and appropriate guidance.

Sadly, the VA's initial treatment of CREW's FOIA request on an issue of great public importance reflects a shockingly callous disregard for the agency's statutory responsibilities under the FOIA. CREW is committed to shedding the brightest light possible on the VA's treatment of veterans suffering from undiagnosed PTSD, a purpose that fully accords with the FOIA's purpose of ensuring "an informed citizenry, vital to the functioning of a democratic society . . ." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). Toward that end, we request that you reverse the initial determinations of the VA, grant CREW a fee waiver, process CREW's request and release within the statutorily mandated time-frame all non-exempt documents.

Sincerely,

Anne L. Weismann
Chief Counsel

Enclosures

4

**EXHIBIT 1**



**DEPARTMENT OF VETERANS AFFAIRS**
Washington DC 20420

JUN / 5 2008

Via Certified Mail (70051820000234103956)
Ms. Anne L. Weismann
Chief Counsel
Citizens for Responsibility and Ethics in Washington (CREW)
1400 Eye Street, NW, Suite 450
Washington, DC 20005

Dear Ms. Weismann:

Thank you for your May 14, 2008, Freedom of Information Act (FOIA) request to the Department of Veterans Affairs (VA) in which you requested:

"any and all records from January 1, 2001, to the present relating to any and all guidance given to any VA staff, consultants and/or other recipient(s) of federal funds regarding the diagnoses of post traumatic stress disorder ("PTSD") ill veterans. This request includes, but is not limited to, any and all records that reflect or contain guidance on (1) whether or not to make a diagnosis of PTSD; (2) alternative diagnoses that should or could be made in lieu of diagnosing PTSD; (3) time or expense factors bearing on a diagnosis of PTSD; and (4) guidance on PTSD diagnoses as they relate to veteran appeals. As used herein, "guidance" includes both formal and informal guidance, advice, recommendations, both formal and informal, no matter how memorialized."

With respect to your request:

1. The Records Management Service (RMS) received your request on May 14, 2008, and assigned it FOIA number 08-7908. Please refer to this number when communicating with this office about your FOIA request. Under our regulations, 38 C.F.R. § 1.553(b), a request should be made to the office having jurisdiction of the records desired. Accordingly, any records search pursuant to this request would include the records maintained in Central Office only.

2. We have classified you as an "other-use" requester. This means that you are entitled to the first two hours of search time and the first 100 duplicated pages free of charge before the agency can begin assessing processing fees.

Page 2

3. Fee Waiver Request

In your request you asked for a waiver of FOIA processing fees. In determining whether a fee waiver is warranted, the agency must analyze whether the disclosure of the information requested is in the public interest because it is likely to contribute significantly to the public's understanding of the operations or activities of the Government. In doing so, we ask:

> (1) Whether the subject of the requested records concerns the operations or activities of the government.

We have determined that the records you requested satisfy this first element.

> (2) Whether the disclosure is "likely to significantly contribute to the public's understanding.

In assessing whether the disclosure is likely to contribute to public understanding of Government operations or activities, the Department must determine if the contents of the requested records are meaningfully informative regarding the operations or activities of the Government.

In support of your fee waiver request you assert the requested records "are likely to contribute to the public's understanding of the extent to which the VA has instructed or encouraged doctors and other health professionals . . . to refrain from making or supporting a diagnosis of PTSD." However, the justification you provided is insufficient to justify granting you a fee waiver. The records you requested would not be meaningfully informative to the subject of your request, for the reasons explained below. First, the subject of your request is a matter that has received congressional and media attention for at least a year. In July 2007, a class action lawsuit was filed against the Department of Veterans Affairs wherein it was alleged the VA deliberately misclassified PTSD to avoid paying benefits.[1] Consequently, the subject of your request is a matter that has already reached the public domain and any records on this subject would not reveal anything new.

In addition, your request is so broadly worded that responsive records would include documents that have no relevance to the activity you allege. For example, items 1 and 2 would encompass records that shed no light on "the extent to which the VA has instructed . . .doctors . . . to refrain from making or supporting a diagnosis of PTSD," (such documents could include a physician's notes regarding making or not making a diagnosis of PTSD that would not necessarily be attributable to any guidance other than the health care provider's own medical opinion). These types of documents would not be evidence of the activity you allege and would not support your request for a fee waiver.

---

[1] Veterans For Common Sense et al. v. Peake, Case No. C 07 3758, U.S.D.C. (N.D. Cal. 2007)

Page 3

*Based on the information provided in your letter, your fee waiver request is denied.* However, we will reconsider this decision if you provide additional information to justify your fee waiver request. Use the factors above as a guide.

4. Scope of Request

According to our regulations, a request for records "must contain a reasonable description of the record desired so that it may be located with relative ease." See 38 C.F.R. §1.553(b). Your request, as written, is overly broad and would impose upon the Department of Veterans Affairs' (VA) limited resources an extremely burdensome search effort. Please be aware that the VA is a highly decentralized agency, consisting of approximately 240,000 employees that are located in hundreds of offices all over the country. Without reference to specific offices or individuals we cannot know how to search for records responsive to your request.

Additionally, portions of your request need to be clarified before we can know where to search for responsive records: in item 3 of your request ("time or expense factors bearing on a diagnosis of PTSD"), it is not at all clear what you are asking for. Are you requesting records related to the amount of clinician time that is involved when making a diagnosis of PTSD; the amount of time it takes to perform a medical exam designed to identify PTSD; the cost of treating someone diagnosed with PTSD, or perhaps something other than the examples we have provided? Similar issues arise with respect to Item 4 of your request ("guidance on PTSD diagnoses as they relate to veteran appeals"); there are multiple ways this item could be understood. For instance, are you referring to clinical appeals or do you mean benefits appeals processed by VBA and/or BVA? Are you asking for records about assistance given to appellants claiming PTSD because they need special assistance or are you asking for records related to adjudication rules related to PTSD?

In an effort to assist you in narrowing the scope of your request, it may be helpful to you to know that a diagnosis of PTSD or an alternative diagnosis are decisions made by physicians. Therefore, it is possible that the Veterans Health Administration would have records on this subject. Also, depending on the nature of the "time or expense factors" in the subject of your request, the Compensation and Pension Service within the Veterans Benefits Administration and the Office of Management may have responsive records.

5. For the reasons explained above, further clarification is needed regarding the scope and subject of your request before we can know how to begin to process this request. If we do not hear back from you within 20 days of receiving this letter, we will assume you are no longer interested in pursuing your request and will close our files on it.

6. If you decide to pursue your request such that processing your request would require searching multiple offices and/or collecting a voluminous amount of records, please be advised we will take a ten-working day time extension to process your request.

Page 4

7.  If you disagree with any of the decisions discussed in this letter, you may file an appeal with the Office of General Counsel at the address below.  If you decide to appeal this response, please include a copy of this letter with your appeal and indicate why you disagree with the response.  You should send your appeal to:

> General Counsel Office (024)
> Department of Veterans Affairs
> 810 Vermont Avenue, N.W.
> Washington, D.C.  20420

We appreciate your interest in the Department of Veterans Affairs.  Customer service is very important to us.  If you have questions about this letter, please contact Ms. Gesla Nwankpa of my staff at (202) 461-7464 and refer to FOIA number 08-7908.

Sincerely,

John Livornese, Director
Records Management Service

**EXHIBIT 2**



May 14, 2008

**By First Class Mail and Fax (202-273-0443)**

Department of Veterans Affairs
FOIA/Privacy Act
810 Vermont Avenue, NW
Washington, DC 20420

**Re: Freedom of Information Act Request**

Dear Sir/Madam:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, audiotapes, videotapes and photographs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, et seq.

Specifically, CREW seeks from the U.S. Department of Veterans Affairs ("VA"), any and all records from January 1, 2001, to the present relating to any and all guidance given to any VA staff, consultants and/or other recipient(s) of federal funds regarding the diagnosis of post traumatic stress disorder ("PTSD") in veterans. This request includes, but is not limited to, any and all records that reflect or contain guidance on (1) whether or not to make a diagnosis of PTSD; (2) alternative diagnoses that should or could be made in lieu of diagnosing PTSD; (3) time or expense factors bearing on a diagnosis of PTSD; and (4) guidance on PTSD diagnoses as they relate to veteran appeals. As used herein, "guidance" includes both formal and informal guidance, advice, recommendations, both formal and informal, no matter how memorialized. Please note that we are not seeking records about individual veterans or individual veteran applications for benefits.

Please search for responsive records regardless of format, medium, or physical characteristics. Where possible, please produce records electronically, in PDF or TIF format on a CD-ROM. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure,

CREW requests that you provide it with an index of those documents as required under <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert</u>. <u>denied</u>, 415 U.S. 977 (1972). As you are aware, a <u>Vaughn</u> index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the <u>Vaughn</u> index must "describe each document or portion thereof withheld, and for **each** withholding it must discuss the consequences of supplying the sought-after information." <u>King v. U.S. Dep't of Justice</u>, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" <u>Id</u>. at 224 (citing Mead <u>Data Central v. U.S. Dep't of the Air Force</u>, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. <u>See</u> 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. <u>Mead Data Central</u>, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a <u>Vaughn</u> index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and VA regulations, 38 C.F.R. § 1.555, CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and expenditures, and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). <u>See</u>, <u>e.g.</u>, <u>McClellan Ecological v. Carlucci</u>, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the extent to which the VA has instructed or encouraged doctors and other health professionals involved in evaluating, assisting or reviewing claims of veterans seeking compensation from the VA to refrain from making or supporting a diagnosis of PTSD.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not

in CREW's financial interest.  CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases.  In addition, CREW will disseminate any documents it acquires from this request to the public.  CREW has established an interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA.  See www.governmentdocs.org.  Currently, this website contains links to thousands of pages of documents CREW and other organizations acquired from multiple FOIA requests.  CREW's own website, www.citizensforethics.org, also includes documents relating to CREW's FOIA litigation, Internal Revenue complaints, and Federal Election Commission complaints. As CREW's website demonstrates, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

## Conclusion

If you have any questions about this request or foresee any problems in releasing fully the requested records, please contact me at (202) 408-5565.  Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination.  Please send the requested documents to Anne L. Weismann, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

Anne L. Weismann
Chief Counsel

3

**EXHIBIT 3**



News From
# DANIEL KAHIKINA AKAKA
## Chairman, Senate Committee on Veterans' Affairs

**OPENING STATEMENT – June 4, 2008**

**Contact: Kawika Riley: (202) 224-9126**

**Hearing on Mental Health**

Welcome to today's hearing. This morning we meet to discuss VA's commitment to PTSD – both in terms of treatment and compensation. Recent events at the Temple VA Medical Center have raised concerns about the Department's dedication to the mental health needs of our returning servicemembers.

I stress, however, that this hearing is not simply about one facility or one clinician. This hearing is part of the Committee's ongoing oversight of VA activities, including VA mental health care.

Last month, we learned that a VA official sent an email that appeared to deliberately conceal data on suicides. Now, we have another VA employee who appears to have linked the increase in veterans seeking compensation for PTSD with a desire to assign a lesser diagnosis of adjustment disorder, an action that alarmed many veterans and others. One question that was raised repeatedly about this email was, "Why would a clinician be so concerned about the compensation rolls?"

As an oversight body, we must know whether the actions of these VA employees point to a systemic indifference to invisible wounds.

The Committee must understand how VA is dealing with PTSD and other mental health concerns relating to war zone service, including how VA balances treatment and compensation issues.

We must ensure that veterans receive compensation for diseases or conditions related to their military service. Indeed, compensation is the gateway to many critical VA benefits, such as health care and vocational rehabilitation.

We must also ensure that veterans receive the proper medical attention and treatment for those conditions. As Dr. Perez's email points out, there may be resource issues at a VA facility if mental health examiners do not have the appropriate amount of time to devote to accurately diagnose a mental health condition.



*News From*

# DANIEL KAHIKINA AKAKA
## Chairman, Senate Committee on Veterans' Affairs

**OPENING STATEMENT – June 4, 2008**

**Contact: Kawika Riley: (202) 224-9126**

**Hearing on Mental Health**

Welcome to today's hearing. This morning we meet to discuss VA's commitment to PTSD – both in terms of treatment and compensation. Recent events at the Temple VA Medical Center have raised concerns about the Department's dedication to the mental health needs of our returning servicemembers.

I stress, however, that this hearing is not simply about one facility or one clinician. This hearing is part of the Committee's ongoing oversight of VA activities, including VA mental health care.

Last month, we learned that a VA official sent an email that appeared to deliberately conceal data on suicides. Now, we have another VA employee who appears to have linked the increase in veterans seeking compensation for PTSD with a desire to assign a lesser diagnosis of adjustment disorder, an action that alarmed many veterans and others. One question that was raised repeatedly about this email was, "Why would a clinician be so concerned about the compensation rolls?"

As an oversight body, we must know whether the actions of these VA employees point to a systemic indifference to invisible wounds.

The Committee must understand how VA is dealing with PTSD and other mental health concerns relating to war zone service, including how VA balances treatment and compensation issues.

We must ensure that veterans receive compensation for diseases or conditions related to their military service. Indeed, compensation is the gateway to many critical VA benefits, such as health care and vocational rehabilitation.

We must also ensure that veterans receive the proper medical attention and treatment for those conditions. As Dr. Perez's email points out, there may be resource issues at a VA facility if mental health examiners do not have the appropriate amount of time to devote to accurately diagnose a mental health condition.

**EXHIBIT 4**



**Subject:** FW: Suggestion

**Date:** Thu, 1 May 2008 08:08:40 -0300

**From:** ████████████████ @va.gov>    ☑ Add Mobile Alert

**To:** ████████████████

**Sent:** Thursday, March 20, 2008 11:08 AM

**Subject: Suggestion**

Given that we are having more and more compensation seeking veterans, I'd like to suggest that you refrain from giving a diagnosis of PTSD straight out. Consider a diagnosis of Adjustment Disorder, R/O PTSD.

Additionally, we really don't or have time to do the extensive testing that should be done to determine PTSD.

Also, there have been some incidence where the veteran has a C & P, is not given a diagnosis of PTSD, then the veteran comes here and we give the diagnosis, and the veteran appeals his case based on our assessment.

This is just a suggestion for the reasons listed above.

**EXHIBIT 5**

CBSNews.com: Print This Story                     http://www.cbsnews.com/stories/2008/06/03/cbsnews_investigates/pr.

# ©CBS NEWS



## VA Staffer To Testify Over PTSD E-Mail
**WASHINGTON, June 3, 2008**

**(CBS)** *CBS News producer Pia Malbran wrote this story for CBSNews.com.*

A Veterans Affairs clinic coordinator is to face questions from lawmakers keen to determine whether a controversial e-mail she sent was simply misguided advice from an individual, or part of a widespread effort by the VA to avoid paying veterans benefits for post traumatic stress disorder (PTSD).

**CBS News** has learned that Norma J. Perez, the former coordinator of the PTSD program at the Veterans Affairs hospital in Temple, Texas, will go before the Senate Committee on Veterans' Affairs Wednesday morning in Washington.

On March 20, she sent an e-mail to the psychologists and social workers who were under her supervision at the VA's PTSD clinic in Temple. In it, Perez wrote: "Given that we are having more and more compensation seeking veterans, I'd like to suggest you refrain from giving a diagnosis of PTSD straight out."

She went on to recommend that clinicians instead "consider a diagnosis of Adjustment Disorder."

"It is outrageous that the VA is calling on its employees to deliberately misdiagnose returning veterans in an effort to cut costs," said Melanie Sloan, the executive director of the Washington-based watchdog group Citizens for Responsibility and Ethics, which obtained and distributed the internal e-mail last month, along with the veterans lobbying group VoteVets.org. **(Click here to see the email.)**

As soon as the e-mail became public, VA Secretary James Peake blasted it, calling it "inappropriate."

In a statement, Peake said the e-mail was isolated and that the VA is "committed to absolute accuracy in a diagnosis and unwavering in providing any and all earned benefits."

The e-mail sparked furor among both Democratic and Republican Congressional leaders, who've pushed for an investigation.

Lawmakers want to make sure PTSD is being properly diagnosed at every VA facility - and ensure Perez was not taking direction from higher management. Democratic presidential candidate Sen. Barack Obama also weighed in, calling for the VA's inspector general to look into the issue.

Sen. Daniel Akaka, a Democrat from Hawaii and the Chairman of the Veterans' Affairs Committee, described the e-mail as, "disturbing and disappointing." He said he hoped Wednesday's hearing would provide more answers on, "how VA is dealing with PTSD," so that all veterans truly get the health care and benefits they need.

Perez, who is not a licensed psychologist, was recently reassigned and now works at the VA hospital in Austin, Texas, as a "Mental Health Integration Specialist."

She will testify alongside the VA's Under Secretary for Health, Dr. Michael Kussman, and Dr. Ira Katz, the VA's head of mental health. Earlier this year, several senators and congressmen called for Dr. Katz's resignation after internal e-mails showed he withheld critical information about veteran suicides from the public. Dr. Katz apologized for the e-mails. He continues to oversee mental health for the VA.

By Pia Malbran
© MMVIII, CBS Interactive Inc. All Rights Reserved.

Feedback  ·  Terms of Service  ·  Privacy Statement

The Associated Press: Lawmakers to examine e-mail from VA employee        http://ap.google.com/article/ALeqM5iIOGYavGjtP3qbJeW69iinB...

 **Associated Press**

**Related News**

PTSD Bingo
Slate - May 19, 2008

VA psychologist to staff: don't
diagnose PTSD
Chicago Tribune - May 16, 2008

Obama Demands VA Investigation
Into PTSD Diagnoses
CBS News - May 16, 2008

Full coverage »



# Lawmakers to examine e-mail from VA employee
**By KIMBERLY HEFLING – May 16, 2008**

WASHINGTON (AP) — Two congressional committee chairmen said Friday they plan to investigate whether there were broader motives behind a Veterans Affairs Department employee's e-mailed suggestion to diagnose veterans with mental disorders that have a lower disability payout.

Sen. Daniel K. Akaka, D-Hawaii, chairman of the Senate Veterans Affairs Committee, said he has asked the VA's Inspector General to review diagnosis patterns at the facility.

The VA has identified the sender of the e-mail as a post-traumatic stress disorder team leader at the VA medical center in Temple, Texas.

After a copy of the e-mail was distributed Thursday by Citizens for Responsibility and Ethics in Washington, a congressional watchdog group, and the Iraq and Afghanistan veterans lobbying group VoteVets.org, VA Secretary James Peake said the action was by a single employee and that the agency was committed to accuracy.

The e-mail dated March 20 was forwarded to VoteVets.org. It said, "Given that we are having more and more compensation seeking veterans, I'd like to suggest that we refrain from giving a diagnosis of PTSD straight out."

A recent Rand Corp. study found that about one in five troops who served in the recent wars have symptoms of major depression or post-traumatic stress disorder.

Akaka said in a statement that he asked Peake to provide renewed guidelines to all VA offices on the proper treatment of PTSD cases.

Last week, House Veterans Affairs Committee Chairman Bob Filner, D-Calif., called Peake before his committee to answer questions about a different set of e-mails that had surfaced during a trial that seemed to suggest VA officials were hiding the number of veterans who were trying to commit suicide. Filner asked Peake to fire those involved with the e-mails, but Peake said after the hearing that he had no plans to do so.

Filner said Friday in an interview at his office that he will likely ask Peake to appear again to answer more questions. Filner said he wants to know what motivated the Texas employee to send the e-mail about saving the VA money.

"Where is she getting it from?" Filner said. "Why is she saying this? Who is giving her the order?"

Although the employee was a team leader, VA spokeswoman Alison Aikele said Friday that the woman was not in management and her e-mail was just a suggestion. "We're not aware of any other instances where this happened," Aikele said.

Hosted by **Google**        Copyright © 2008 The Associated Press. All rights reserved.

CBSNews.com: Print This Story

http://www.cbsnews.com/stories/2008/05/16/politics/politico/thecrypt.

# ⊕CBS NEWS



# Obama Demands VA Investigation Into PTSD Diagnoses
**May 16, 2008**

**(The Politico)** Sen. Barack Obama (D-Ill.) is demanding an investigation into reports that a supervisor at a Texas Veterans' Affairs facility told staff members to refrain from diagnosing returning war veterans with post-traumatic stress disorder in order to reduce costs.

On Friday, Obama sent a letter to Veterans Affairs Secretary James Peake expressing his "serious concerns" over the reports and demanding an investigation.

The Washington Post broke the story on Friday, which included emails from Dr. Norma Perez suggesting to her staff members that they "refrain from giving a diagnosis of PTSD straight out," because of the increasing costs of treating the disorder.

"Simply put, Ms. Perez's email is outrageous," Obama wrote in the letter. "As you well know, PTSD is the most prevalent mental disorder afflicting our returning...veterans."

"In order to receive their deserved benefits, these brave men and women must endure a long and arduous process. To hear that a VA official is promoting misdiagnoses of soldiers to save money is unacceptable and is tantamount to fraud. "

Peake issued a statement on the matter, saying that Perez's email was "inappropriate" and did not reflect VA policy.

"Too many veterans see the VA as a bureaucracy with the singular goal of denying services and benefits to veterans," said Obama. "This recent incident merely serves to promote that impression."

The Democratic presidential hopeful gave Peake a deadline of May 23 to inform him if the department will open an investigation.

Obama, who is a member of the Senate Veterans' Affairs Committee, also wrote a letter to committee chairman Sen. Daniel Akaka (D-Hawaii) asking him to look into the matter.

Copyright 2008 POLITICO

**Feedback    Terms of Service    Privacy Statement**



THIS STORY HAS BEEN FORMATTED FOR EASY PRINTING

# E-mail from VA worker says to avoid PTSD diagnosis

**AP** Associated Press

**By Kimberly Hefling, Associated Press Writer | May 15, 2008**

WASHINGTON --An internal e-mail written by a Veterans Affairs Department employee suggested avoiding a diagnosis of post-traumatic stress disorder for veterans and instead considering a diagnosis that might result in a lower disability payment.

A copy of the e-mail was distributed Thursday by the groups Citizens for Responsibility and Ethics in Washington, a congressional watchdog group, and VoteVets.org. The e-mail dated March 20 had been forwarded to VoteVets.org, an Iraq and Afghanistan war veterans lobbying group opposed to the Bush administration's handling of the war and veterans issues.

The name of the sender and the recipients were blacked out by the groups. The e-mail has the subject title "Suggestion."

"Given that we are having more and more compensation seeking veterans, I'd like to suggest that we refrain from giving a diagnosis of PTSD straight out. Consider a diagnosis of Adjustment Disorder, R/O PTSD," the e-mail said.

It also said, "Additionally, we really don't or have time to do the extensive testing that should be done to determine PTSD."

VA Secretary James Peake issued a statement calling the e-mail sender's suggestions "inappropriate" and said the employee had been repudiated and was apologetic. The VA did not release the name of the employee.

"We are committed to absolute accuracy in a diagnosis and unwavering in providing any and all earned benefits," Peake said. "PTSD and the mental health arena is no exception."

Just last week, Peake was called to Capitol Hill to answer questions about internal e-mails that surfaced during a trial that seemed to suggest VA officials were hiding the number of veterans trying to kill themselves. One e-mail started with "Shh!" Some lawmakers have said the official who wrote it should be fired, but Peake has said he has no plans to do so. Peake promised to make the agency more open.

Post-traumatic stress disorder is an anxiety disorder that can occur after a traumatic event such as war. Nightmares, flashbacks, and substance abuse can be among the symptoms.

A recent study by the Rand Corp., found that that about one in five troops who found in Iraq or Afghanistan have symptoms of major depression or post-traumatic stress disorder.

Jon Soltz, an Iraq War Veteran who is chairman of VoteVets.org, said some veterans have suspected they received a diagnosis of an adjustment disorder instead of the correct diagnosis of PTSD because the payout to them would be less.

"Many veterans believe that the government just doesn't want to pay out the disability that comes along with a PTSD diagnosis," Soltz said in a statement, "and this revelation will not allay their concerns." ∎

© Copyright 2008 The New York Times Company

## washingtonpost.com

Advertisement



**CORRECTION TO THIS ARTICLE**
Some earlier versions of this story misstated the professional
credentials and job title of Norma Perez. She is a psychologist and
works as one of several PTSD program team leaders at the
Department of Veterans Affairs' Olin E. Teague Veterans Center in
Temple, Tex.

# Official Urged Fewer Diagnoses of PTSD

By Christopher Lee
Washington Post Staff Writer
Friday, May 16, 2008; A02

A psychologist who helps lead the post-traumatic
stress disorder program at a medical facility for
veterans in Texas told staff members to refrain from diagnosing PTSD because so many veterans were
seeking government disability payments for the condition.

"Given that we are having more and more compensation seeking veterans, I'd like to suggest that you
refrain from giving a diagnosis of PTSD straight out," Norma Perez wrote in a March 20 e-mail to
mental-health specialists and social workers at the Department of Veterans Affairs' Olin E. Teague
Veterans' Center in Temple, Tex. Instead, she recommended that they "consider a diagnosis of
Adjustment Disorder."

VA staff members "really don't . . . have time to do the extensive testing that should be done to
determine PTSD," Perez wrote.

Adjustment disorder is a less severe reaction to stress than PTSD and has a shorter duration, usually no
longer than six months, said Anthony T. Ng, a psychiatrist and member of Mental Health America, a
nonprofit professional association.

Veterans diagnosed with PTSD can be eligible for disability compensation of up to $2,527 a month,
depending on the severity of the condition, said Alison Aikele, a VA spokeswoman. Those found to
have adjustment disorder generally are not offered such payments, though veterans can receive medical
treatment for either condition.

Perez's e-mail was obtained and released publicly yesterday by VoteVets.org, a veterans group that has
been critical of the Bush administration's policies in Iraq and Afghanistan, and Citizens for
Responsibility and Ethics in Washington (CREW), a nonprofit government watchdog group.

"Many veterans believe that the government just doesn't want to pay out the disability that comes along
with a PTSD diagnosis, and this revelation will not allay their concerns," John Soltz, chairman of
VoteVets.org and an Iraq war veteran, said in a statement.

Melanie Sloan, executive director of CREW, said in a statement: "It is outrageous that the VA is
calling on its employees to deliberately misdiagnose returning veterans in an effort to cut costs. Those
who have risked their lives serving our country deserve far better."

Veterans Affairs Secretary James B. Peake said in a statement that Perez's e-mail was "inappropriate" and does not reflect VA policy. It has been "repudiated at the highest level of our health care organization," he said.

"VA's leadership will strongly remind all medical staff that trust, accuracy and transparency is paramount to maintaining our relationships with our veteran patients," Peake said.

Peake said Perez has been "counseled" and is "extremely apologetic." Aikele said Perez remains in her job.

A Rand Corp. report released in April found that repeated exposure to combat stress in Iraq and Afghanistan is causing a disproportionately high psychological toll compared with physical injuries. About 300,000 U.S. military personnel who have served in Iraq or Afghanistan are suffering from PTSD or major depression, the study found. The economic cost to the United States -- including medical care, forgone productivity and lost lives through suicide -- is expected to reach $4 billion to $6 billion over two years.

Ng said diagnosing PTSD often requires observing a patient for weeks or months because the condition implies a long, lingering effect of stress.

"Most people exposed to trauma, in general, can get better," Ng said. "You don't want to over-diagnose people with PTSD. Whether it's adjustment disorder is one thing. It's usually a temporary disorder with severity that is not as bad as someone with full-blown PTSD."

**View all comments** that have been posted about this article.

© 2008 The Washington Post Company

Ads by Google

**NIMH PTSD Trial**
National Institute of Health is conducting a PTSD study. Learn More
PatientInfo.NIMH.NIH.gov

**PTSD symptoms**
Learn the signs and symptoms of post-traumatic stress disorder.
RevolutionHealth.com

**VA Loan Specialsits**
Get a Dept of Veteran Affairs Loan. Qualify Online - Up to $417,000!
www.VaMortgageCenter.com

# washingtonpost.com

# VA Psychologist Denies Costs Were Behind E-Mail on PTSD

Wednesday, June 4, 2008; A08

Advertisement



**VA Psychologist Denies Costs Were Behind E-Mail on PTSD**

A Department of Veterans Affairs psychologist denies that she was trying to save money when she suggested in a March 20 e-mail that counselors make fewer diagnoses of post-traumatic stress disorder in injured soldiers.

Norma Perez, who helps coordinate a post-traumatic stress disorder clinical team in central Texas, will testify today before a Senate panel, which wants to learn whether broader VA policy motives were behind the e-mail.

In her prepared testimony, Perez indicated she might have been out of line to cite growing disability claims. She said her intent was to remind staffers that stress symptoms could also be caused by adjustment disorder. The less-severe diagnosis could save VA millions of dollars in disability payouts.

In her e-mail to staffers at the VA medical center in Temple, Tex., Perez wrote, "Given that we are having more and more compensation-seeking veterans, I'd like to suggest that you refrain from giving a diagnosis of PTSD straight out. . . . We really don't . . . have time to do the extensive testing that should be done to determine PTSD."

VA has strenuously denied that cost-cutting is a factor in its treatment decisions.

*N.Y. Is Sued Over Gay Marriages*

NEW YORK -- A Christian legal organization, the Alliance Defense Fund, said it has sued to stop New York from recognizing same-sex marriages legally performed in other states. Same-sex marriages are unconstitutional in New York, but Gov. David A. Paterson (D) told state agencies on May 14 that the state must recognize those performed in Massachusetts, Canada and other places where they are legal. The group says it filed its lawsuit in the Bronx. Several Republican state senators are named as party to the suit.

*Astronauts Attach Lab to Station*

CAPE CANAVERAL -- A team of astronauts working inside and out anchored a giant billion-dollar Japanese lab to the international space station, making it the biggest room there. The bus-size lab -- named Kibo, Japanese for hope -- stretches 37 feet and weighs more than 32,000 pounds. The honor of operating the space station's robot arm, to do the heavy lifting, fell to Japanese astronaut Akihiko Hoshide. He accompanied Kibo to orbit aboard the space shuttle Discovery.

*Salmonella Linked to Tomatoes*

ATLANTA -- An outbreak of salmonella food poisoning first linked to uncooked tomatoes has been reported in nine states, U.S. health officials said. Lab tests have confirmed 40 illnesses in Texas and New Mexico as the same type of salmonella. No farm, distributor or grocery chain has been identified as the main source, said a CDC epidemiologist working on the investigation.

**-- From News Services**

View all comments that have been posted about this article.

**Post a Comment**

**View all comments** that have been posted about this article.

You must be logged in to leave a comment.Login | Register



Submit

Comments that include profanity or personal attacks or other inappropriate comments or material will be removed from the site. Additionally, entries that are unsigned or contain "signatures" by someone other than the actual author will be removed. Finally, we will take steps to block users who violate any of our posting standards, terms of use or privacy policies or any other policies governing this site. Please review the full rules governing commentaries and discussions. You are fully responsible for the content that you post.

© 2008 The Washington Post Company

Ads by Google

**Suffer From PTSD?**
Study on an investigational drug that may help with PTSD symptoms
PatientInfo.NIMH.NIH.gov

**PTSD symptoms**
Learn the signs and symptoms of post-traumatic stress disorder.
RevolutionHealth.com

**Pending VA Medical Claim?**
Dr. Bash, Empathetic to Your Needs Helps Veterans Receive Benefits
www.VeteransMedAdvisor.com

# washingtonpost.com

# VA denies money a factor in PTSD diagnoses

By HOPE YEN
The Associated Press
Tuesday, June 3, 2008; 8:00 PM

Advertisement


WASHINGTON -- A Veterans Affairs psychologist denies that she was trying to save money when she suggested that counselors make fewer diagnoses of post-traumatic stress disorder in injured soldiers.

Norma Perez, who helps coordinate a post-traumatic stress disorder clinical team in central Texas, indicated she might have been out of line to cite growing disability claims in her March 20 e-mail titled "Suggestion." She said her intent was simply to remind staffers that stress symptoms could also be adjustment disorder. The less severe diagnosis could save the VA millions of dollars in disability payouts.

"In retrospect, I realize I did not adequately convey my message appropriately, but my intent was unequivocally to improve the quality of care our veterans received," Perez said in testimony prepared for delivery Wednesday before a Senate panel.

The Senate Veterans' Affairs Committee and the VA inspector general are investigating whether there were broader VA policy motives behind the e-mail, which was obtained and disclosed last month by two watchdog groups. The VA has strenuously denied that cost-cutting is a factor in its treatment decisions.

"One question that was raised repeatedly about this latest e-mail was, 'Why would a clinician be so concerned about the compensation rolls?'" said Sen. Daniel Akaka, D-Hawaii, who chairs the Senate panel. "As an oversight body, we must know whether the actions of these VA employees point to a systemic indifference to invisible wounds."

VA Secretary James Peake has called Perez's e-mail suggestion "inappropriate." VA officials this week said her e-mail was taken out of context.

"The e-mail, as characterized by others, does not reflect the policies or conduct of our health care system," said Michael Kussman, VA's undersecretary for health, in testimony prepared for the Senate hearing. "We certainly agree that it could have been more artfully drafted."

In her e-mail to staffers at the VA medical center in Temple, Texas, Perez wrote, "Given that we are having more and more compensation-seeking veterans, I'd like to suggest that you refrain from giving a diagnosis of PTSD straight out. ... We really don't or have time to do the extensive testing that should be done to determine PTSD."

Many veterans and injured troops have long charged that the government might seek to reduce disability costs by assigning a lower benefits rating. Last year, retired Lt. Gen. James Terry Scott,

VA denies money a factor in PTSD diagnoses                    http://www.washingtonpost.com/wp-dyn/content/article/2008/06/03

chairman of the Veterans' Disability Benefits Commission, said he believed the Army might at least subconsciously consider cost. A lawsuit filed in San Francisco accuses the VA of misclassifying PTSD claims.

In her testimony, Perez said symptoms for PTSD and adjustment disorder are often similar, as are the treatments for them. She said by making an initial diagnosis of a lesser disorder, VA staff can begin treatment right away without going through the arduous process of deeming it PTSD.

Perez also noted that awarding disability benefits is not part of her staff's work, but she did not say why she chose to cite that as a factor in urging fewer PTSD diagnoses. Veterans diagnosed with PTSD are eligible to receive up to $2,527 a month in government benefits.

A recent Rand Corp. study found about 300,000 U.S. military personnel who served in Iraq or Afghanistan are suffering from PTSD or major depression, potentially saving the government millions of dollars if lesser diagnoses are used _rightly or wrongly _ in disability benefits decisions.

"Although our clinic is a treatment clinic, we all fully support the compensation process and the department's policy of erring in the best interest of the veteran whenever there is any doubt," Perez wrote.

Perez's testimony comes after Peake was called to Capitol Hill last month to answer questions about internal e-mails suggesting that VA officials were hiding the number of veterans trying to kill themselves. One of the e-mails, disclosed during a San Francisco trial, started with "Shh!" Some lawmakers have said the VA's top mental health official who wrote it, Dr. Ira Katz, should be fired, but Peake has said he has no plans to do so.

———

On the Net:

A copy of Perez's e-mail can be found at http://www.citizensforethics.org/node/31690

Department of Veterans Affairs: http://www.va.gov/

Senate Veterans' Affairs Committee: http://www.senate.gov/veterans/public/

© 2008 The Associated Press

Ads by Google

**Experienced a Trauma?**
Participate in Key Studies at The NIMH. See if You're Eligible.
PatientInfo.NIMH.NIH.gov

**PTSD symptoms**
Learn the signs and symptoms of post-traumatic stress disorder.
RevolutionHealth.com

**washingtonpost.com**

# Judge to consider VA e-mail about PTSD diagnoses

By PAUL ELIAS
The Associated Press
Thursday, June 5, 2008; 9:20 PM

Advertisement

Sprint ahead

*Clear your day instantly*

$99.

Get it now →

SAN FRANCISCO -- A federal judge considering a lawsuit that alleges inadequate medical care for veterans ordered government lawyers Thursday to explain an e-mail by a Veterans Administration psychologist suggesting that counselors make a point to diagnose fewer post-traumatic stress disorder cases.

The hearing ordered by U.S. District Judge Samuel Conti follows a two-week trial that ended last month. Veterans groups had sued the VA, saying it inadequately addressed a "rising tide" of mental health problems, especially post-traumatic stress disorder and suicides.

The plaintiffs asked Conti to reopen the case in light of the e-mail discovered after the trial ended.

The judge agreed, saying "the e-mail raises potentially serious questions that may warrant further attention." He ordered lawyers for both sides to appear in court Tuesday to discuss whether the e-mail has any bearing on the case.

The document in question is a March 20 memo written by Norma Perez, who helps coordinate a post-traumatic stress disorder clinical team in central Texas.

"Given that we are having more and more compensation-seeking veterans, I'd like to suggest that you refrain from giving a diagnosis of PTSD straight out," Perez wrote to VA counselors. "We really don't or have time to do the extensive testing that should be done to determine PTSD."

The e-mail was forwarded to VoteVets.org, an Iraq and Afghanistan war veterans lobbying group opposed to the Bush administration's handling of the war and veterans issues.

Lawyers for the veterans groups argue that Perez's e-mail goes to the heart of their case, showing the VA's indifference to treating mental health.

"This is not Joe the janitor writing this," vets' lawyer Arturo Gonzalez said. "This is a supervisor, and it shows how the VA thinks."

Gonzalez wants the judge to add the e-mail to the evidence given to him at the non-jury trial in support of the lawsuit.

Government lawyers for the VA didn't return a telephone call Thursday. But on Wednesday, Justice Department lawyer James Schwartz wrote the judge a letter arguing that the e-mail was a mistake, that Perez had been "counseled" and that it has nothing to do with the lawsuit.

"It was the action of a single individual that in no way represented the policies of VA, that, once discovered, was dealt with quickly and appropriately," Schwartz told the judge.

Perez told senators Wednesday at a Senate Veterans Affairs Committee hearing called to investigate the e-mail that her message was poorly written and that she meant to remind counselors that they could initially diagnose patients with a less severe stress condition known as "adjustment disorder."

© 2008 The Associated Press

**Ads by Google**

**Experienced a Trauma?**
Participate in Key Studies at The NIMH. See if You're Eligible.
PatientInfo.NIMH.NIH.gov

**PTSD Testing - Coulbourn**
Behavioral Testing Instruments PTSD Testing Leaders
www.coulbourn.com

**EXHIBIT 6**

# CREW | citizens for responsibility and ethics in washington

May 28, 2008

**By First Class Mail and Fax (202-273-0443)**

Lizzette Katilius
Department of Veteran Affairs
FOIA/Privacy Act
810 Vermont Avenue, N.W.
Washington, D.C. 20420

Re: **May 14, 2008 Freedom of Information Act Request**

Dear Ms. Katilius:

I write to memorialize our conversation of this morning and to express my concern with the manner in which the Department of Veteran Affairs ("VA") is handling CREW's Freedom of Information Act ("FOIA") request of May 14, 2008.

On May 14, 2008, CREW submitted to the VA a FOIA request seeking all guidance given to any VA staff, consultants and/or other recipients of federal funds regarding the diagnosis of post traumatic stress disorder ("PTSD") in veterans. CREW also specified categories of records that fall within its request. In addition, CREW sought a waiver of fees.

Today you advised me that the VA would not search any field offices because, according to you, VA regulations require the VA to search only central offices. Your representation about what VA FOIA regulations require, however, is not supported by the plain language of those regulations or any of the FOIA guidance posted on VA's website, www.va.gov.

VA regulations at 38 C.F.R. § 1.553 provide in relevant part as follows:

> The request should be made to the office concerned (having juris-
> diction of the record desired) or, if not known, to the Director or
> Veterans Services Officer in the nearest VA regional office . . . *or*
> *to the Department of Veterans Affairs Central Office, 810 Vermont*
> *Avenue, N.W., Washington, DC 20420 . . .*

(emphasis added). Given that the regulations clearly authorize filing a FOIA request with the VA Central Office as an alternative to filing it with a regional office filing and given that CREW directed its FOIA request to the VA Central Office, your suggestion that the VA now has no obligation to search any of its regional offices in response to CREW's request is completely unfounded.

This conclusion is reinforced by the guidance VA offers on its website.  Under the heading "Where to Make a FOIA Request," the VA explains that it is divided into three administrations (the Veterans Health Administration, the Veterans Benefits Administration and the National Cemetery Administration).  Further, the website states that "[i]f you know the office that maintains the records you are seeking, you should write to that office or contact the <u>VA Central Office FOIA/Privacy Act Officer</u> for the custodian of the record." (emphasis in original), Where, however a requester does not know the office that maintains the records the requester is seeking, the website provides directions for five categories of documents:  medical records, national cemetery records, other benefits records, Inspector General records, and "all other records."  Requesters seeking records falling into this last category -- the category that best captures CREW's request -- are directed to make their request of VA headquarters, precisely what CREW did here.

Second, you stated that within headquarters there are 30 different offices, at least some of which are unlikely to have any of the records CREW seeks.  You were unwilling, however, to provide me any guidance as to which offices are unlikely to have records and stated instead that it was up to CREW to narrow its request, with no input or guidance from the VA.  Your refusal to offer any guidance is completely at odds with an agency that claims to be diligently attempting to comply with its statutory requirements under the FOIA.

Finally, you stated that CREW's request for a fee waiver would be denied, with no explanation of the basis for such a denial.  Given the record, which amply supports CREW's request for a fee waiver, the fact that CREW is almost always granted a fee waiver and the VA's failure to articulate any basis for its anticipated fee waiver denial, we can only conclude that the VA is attempting to evade its responsibilities under the FOIA and keep the public from learning about the true extent to which the VA has encouraged alternative diagnoses to avoid the costs associated with a diagnosis of PTSD.

CREW remains willing to narrow its FOIA request appropriately based on any guidance the VA can provide.  The records we seek are critical to the public in understanding the emerging scandal regarding how the U.S. government has treated veterans and service members who have fought so bravely for our country, only to be denied proper treatment for the mental health injuries they have suffered as a result of their service.

Sincerely,


Anne L. Weismann
Chief Counsel