UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                          )
CITIZENS FOR RESPONSIBILITY AND    )
ETHICS IN WASHINGTON,                        )
                                                          )
            Plaintiff,                                   )
                                                          )
            v.                                             )            Civil Action No. 08-1481 (PLF)
                                                          )
U.S. DEPARTMENT OF VETERANS       )
AFFAIRS,                                               )
                                                          )
            Defendant.                               )
_____)

OPINION

   This Freedom of Information Act case is before the Court on the defendant's

renewed motion for summary judgment.  On September 28, 2011, the Court denied that motion

without prejudice and granted in part the plaintiff's request for discovery.  This Opinion explains

the reasoning underlying that September 28, 2011 Order and sets forth the scope of permissible

discovery.[1]

_____

  [1]  The papers reviewed in connection with the defendant's renewed motion for summary judgment include: the plaintiff's complaint ("Compl.") [Dkt. No. 1]; the defendant's motion for summary judgment ("First MSJ") [Dkt. No. 16]; the plaintiff's opposition to the defendant's motion for summary judgment ("Opp. to First MSJ") [Dkt. No. 18]; the defendant's reply in support of its motion for summary judgment ("Reply to Opp. to First MSJ") [Dkt. No. 21]; the plaintiff's supplemental memorandum in opposition to the defendant's motion for summary judgment ("Pl. Surreply to First MSJ") [Dkt. No. 23]; the defendant's renewed motion for summary judgment ("Mot.") [Dkt. No. 36]; the defendant's statement of material facts as to which there is no genuine dispute ("Def. Statement") [Dkt. No. 36]; the plaintiff's opposition to the defendant's renewed motion for summary judgment ("Opp.") [Dkt. No. 37]; the plaintiff's statement of material facts as to which there is no genuine issue ("Pl. Statement") [Dkt. No. 37]; the defendant's reply in support of its renewed motion for summary judgment ("Reply") [Dkt. No. 40]; the plaintiff's surreply to the defendant's reply in support of its renewed motion for summary judgment ("Pl. Surreply") [Dkt. No. 45]; the defendant's memorandum in response to

## I.  BACKGROUND

On March 20, 2008, Dr. Norma J. Perez, at that time employed as a psychologist and coordinator of the post traumatic stress disorder ("PTSD") clinical team at a Department of Veterans Affairs ("VA") medical center in Temple, Texas, authored an e-mail that she sent to eight local VA colleagues.  See Declaration of Norma J. Perez ("Perez Decl.") ¶¶ 1, 3, Oct. 1, 2010 [Dkt. No. 40-8].  This e-mail, titled "Suggestion," stated in full:

> Given that we are having more and more compensation seeking veterans, I'd like to suggest that you refrain from giving a diagnosis of PTSD straight out.  Consider a diagnosis of Adjustment Disorder, R/O PTSD.
>
> Additionally, we really don't or have time to do the extensive testing that should be done to determine PTSD.
>
> Also, there have been some incidence [sic] where the veteran has a C & P, is not given a diagnosis of PTSD, then the veteran comes here and we give the diagnosis, and the veteran appeals his case based on our assessment.
>
> This is just a suggestion for the reasons listed above.

Perez Decl., Attachment, E-mail from Dr. Norma J. Perez at 1, Mar. 20, 2008.  This e-mail was leaked to the public in May 2008.  See generally Compl., Ex. 6.

Dr. Perez since has stated that her intent in sending this e-mail "was to emphasize the importance of providing an accurate diagnosis and to ensure that veterans receive treatment appropriate to their precise needs immediately; thus improving the access to care and quality of care provided to veterans."  Perez Decl. ¶ 3.  But many viewed the e-mail as suggesting that VA

the plaintiff's surreply ("Def. Response to Pl. Surreply") [Dkt. No. 49]; the defendant's notice of supplemental release ("Def. Supp. Release") [Dkt. No. 50]; and the plaintiff's response to the defendant's notice of supplemental release ("Pl. Response to Def. Supp. Release") [Dkt. No. 51].

employees should refrain from giving PTSD diagnoses as a cost-cutting measure, see generally

Compl., Ex. 6, and Dr. Perez's e-mail became the subject of a congressional hearing and

substantial news coverage.  See Opp. at 3.

On May 14, 2008, shortly after Dr. Perez's e-mail became public, plaintiff

Citizens for Responsibility and Ethics in Washington ("CREW") submitted an FOIA request to

the VA, stating:

> CREW seeks from the [VA], any and all records from January 1,
> 2001, to the present relating to any and all guidance given to any
> VA staff, consultants and/or other recipient(s) of federal funds
> regarding the diagnosis of post traumatic stress disorder ("PTSD")
> in veterans.  This request includes, but is not limited to, any and all
> records that reflect or contain guidance on (1) whether or not to
> make a diagnosis of PTSD; (2) alternative diagnoses that should or
> could be made in lieu of diagnosing PTSD; (3) time or expense
> factors bearing on a diagnosis of PTSD; and (4) guidance on PTSD
> diagnoses as they relate to veteran appeals.  As used herein,
> "guidance" includes both formal and informal guidance, advice,
> recommendations, both formal and informal, no matter how
> memorialized.  Please note that we are not seeking records about
> individual veterans or individual veteran applications for benefits.

Compl., Ex. 1, Letter from Anne L. Weismann to the VA at 1, May 14, 2008 [Dkt. No. 1-2].

CREW also requested from the VA a wavier of fees associated with processing its request for

records.  See id. at 2.

By letter dated June 5, 2008, the VA denied CREW's request for a fee waiver and

also claimed that the request for documents was "'overly broad'" and imposed on the VA "'an

extremely burdensome search effort.'"  Compl. ¶ 18 (citation omitted).  CREW appealed the

VA's decisions administratively, see id. ¶ 19, but, as of August 27, 2008, the VA neither had

responded to CREW's administrative appeal nor had produced any documents responsive to

CREW's request.  See id. ¶ 22.  Consequently, on that date, CREW filed a complaint in this

Court under the FOIA, making two claims: (1) that the VA failed to produce requested records;

and (2) that the VA improperly denied CREW's request for a fee waiver.  See id. at 6-8.

       After CREW filed its complaint, the VA issued the requested fee waiver to

CREW, reversing its prior position.  See Order at 1, June 6, 2009 [Dkt. No. 12].  The Court

therefore dismissed as moot CREW's second claim for relief, see id., leaving one remaining

claim in this case: that the VA failed to produce requested records to CREW.  See Compl. ¶ 2.

       On September 23, 2009, the VA filed a motion for summary judgment in which it

asserted that it had performed an adequate search and released to CREW all records responsive to

CREW's request.  See First MSJ at 1.  CREW opposed the VA's motion, arguing, among other

things, that the VA's declarations were deficient and that the VA had failed to conduct an

adequate search for electronic records.  See Opp. to First MSJ at 8-14.  Regarding the issue of

electronic records, although Dr. Perez's e-mail was dated March 20, 2008, CREW asserted that

the VA's declarations revealed that its search of its electronic records "did not reach back to that

time, but rather included only e-mail messages dating back to December 9, 2008."  Id. at 9.  In

support of its position, CREW pointed to the declaration of John Livornese, the Director of FOIA

Service for the VA, in which Mr. Livornese stated: "As a result of the search [of Dr. Perez's

records], two files were provided by VA Exchange Administrators — a snapshot of her current

mailbox and a copy of email messages dating back to 12/9/08, which contained one or more

search terms and were deemed responsive."  Declaration of John Livornese ("Sept. 2009

Livornese Decl.") ¶ 8, Sept. 18, 2009 [Dkt. Nos. 16-4, 36-3].

The VA subsequently explained in reply that it was "unable to recover emails created before December 9, 2008 because the VA's regular rotation of backup tapes precluded the recovery of older email messages." Reply to Opp. to First MSJ at 9. In a supplemental declaration dated November 5, 2009, Mr. Livornese further elaborated:

> Results of the search of the Perez email account that were deemed responsive included a copy of email messages dating back to 12/9/08. Email messages prior to that date were not available for the following reasons: a search of email by history involves a search of emails that have been backed-up. Prior email messages are backed up, or copied, to a tape; when a request is made for a search of email, the tapes are restored. In this case, the availability for the tapes on the email system containing the Perez emails allowed for recovery back to the date of 12/9/08. Tapes containing information prior to this date had been placed back into tape rotation and reused, causing old data to be rewritten. Emails before 12/9/08, therefore, were not available. In sum, although the search encompassed the period January 1, 2001 to December 31, 2008, the records retrieved as a result of that search dated back only to December 9, 2008.

Supplemental Declaration of John Livornese ("Nov. 2009 Livornese Supp. Decl.") ¶ 5, Nov. 5, 2009 [Dkt. Nos. 21-1, 36-3].

Far from putting this issue to rest, CREW considered the VA's reply a "revelation[] that the VA . . . destroyed documents clearly responsive to CREW's . . . FOIA . . . request[.]" Pl. Surreply to First MSJ at 1. According to CREW, Mr. Livornese's supplemental declaration established that the "VA destroyed potentially responsive records *after* CREW made its FOIA request in this matter on May 14, 2008 — a request that expressly sought emails and other electronic records — and *after* CREW filed its lawsuit on August 27, 2008 in this case." Id. at 2-3 (emphasis in original).

5

After briefing on the VA's motion for summary judgment was complete, the VA made two supplemental releases of documents to CREW, containing, among other things, a copy of Dr. Perez's March 20, 2008 e-mail.  See Notice of Supplemental Release at 1, Mar., 26, 2010 [Dkt. No. 24]; Notice of Supplemental Release at 1-2, Apr. 16, 2010 [Dkt. No. 30].  And the VA then withdrew its motion for summary judgment with the intent of filing a renewed motion that would consolidate all issues into a single set of briefs.  See Notice of Withdrawal of Motion at 1, May 27, 2010 [Dkt. No. 32].

Before the parties proceeded with a second round of summary judgment briefing, however, another issue arose: CREW sought the deposition of Mr. Livornese "to obtain information on the unexplained issue of destruction of electronic records[.]"  Opp. to Mot. for Protective Order at 6, July 6, 2010 [Dkt. No. 34].  The VA sought a protective order precluding this deposition.  See Mot. for Protective Order at 1, July 1, 2010 [Dkt. No. 33].  The VA argued that such discovery was inappropriate in this FOIA case; moreover, the VA asserted that CREW's concerns likely would be addressed in the VA's renewed summary judgment motion. See id. at 4-5.  As the VA stated, its renewed motion would include "a declaration from Mr. Livornese and an IT employee who was more directly involved with the electronic search," which would address "the extent to which backup tapes were searched."  Id. at 5 n.2.

On July 14, 2010, the Court denied the VA's motion for a protective order, concluding that limited discovery through Mr. Livornese's deposition likely would assist the Court in resolving the issues in this case.  See Memorandum Op. & Order at 1, July 14, 2010 [Dkt. No. 35].  Thus, the parties proceeded with Mr. Livornese's deposition, which took place on July 23, 2010.

Soon thereafter, on August 3, 2010, the VA filed its renewed motion for summary judgment.  CREW filed its opposition, and the VA replied.  Both sides then filed surreplies.

## II.  THE FREEDOM OF INFORMATION ACT

The fundamental purpose of the FOIA is to assist citizens in discovering "*what their government is up to.*"  U.S. Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989) (internal quotations and citation omitted) (emphasis in original). As the Supreme Court recently emphasized again, the FOIA strongly favors openness and "'broad disclosure'" with narrowly construed exemptions.  Milner v. Department of the Navy, 131 S. Ct. 1259, 1265 (2011) (quoting Department of Justice v. Tax Analysts, 492 U.S. 136, 151 (1989)).  As Congress recognized in enacting the FOIA, an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978); see also Department of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (purpose of the FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny") (internal quotations and citation omitted).  Therefore, "disclosure, not secrecy, is the dominant objective of the Act."  Department of the Air Force v. Rose, 425 U.S. at 361.

FOIA cases typically and appropriately are decided on motions for summary judgment.  See Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007); Farrugia v. Executive Office for U.S. Attorneys, Civil Action No. 04-0294, 2006 WL 335771, at *3 (D.D.C. Feb. 14, 2006).  And in an FOIA case, the Court *may* award summary judgment solely on the basis of information provided in affidavits or declarations when the affidavits or declarations are "relatively detailed and non-conclusory," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations and citation omitted), and "describe the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826-27 (D.C. Cir. 1973); Hertzberg v. Veneman, 273 F. Supp. 2d 67, 74 (D.D.C. 2003).  In the end, an agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotations and citation omitted); see also Students Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Hertzberg v. Veneman, 273 F. Supp. 2d at 74.

### III.  DISCUSSION

#### A.  The VA's Evolving Declarations

The VA contends that it is entitled to summary judgment because it conducted reasonable searches for responsive records and released to CREW all responsive records in full except for one minor withholding, the redaction of a name, under FOIA Exemption 6.  CREW argues that summary judgment is inappropriate because the VA has failed to conduct reasonable searches for responsive records.  Most importantly for CREW's request for discovery, its opposition includes an allegation that the VA improperly destroyed relevant records.  As CREW describes it, the VA "failed to impose a litigation hold for records responsive to CREW's FOIA request and, as a result, the VA has improperly destroyed responsive records after they were requested by CREW."  Opp. at 9.

8

CREW's allegation of document destruction arises from four declarations of Mr. Livornese now filed in this case and the declarations of Ronald Klavohn, the Director of the Core Infrastructure Services group for the Office of Information and Technology at the VA.  The Court reviews below those declarations as they relate to the allegation of document destruction.

In Mr. Livornese's first declaration, which he signed on September 18, 2009, he stated that the VA searched Dr. Perez's electronic records for documents responsive to CREW's FOIA request.  See Sept. 2009 Livornese Decl. ¶ 8.  He asserted, without providing any explanation, that the VA only was able to review Dr. Perez's e-mail messages dating back to December 9, 2008.  See id.  The e-mail that ultimately gave rise to this case, however, was sent by Dr. Perez nine months earlier, on March 20, 2008.  See Perez Decl. ¶ 3.

On November 5, 2009, Mr. Livornese submitted a supplemental declaration in which he provided an explanation for the purported December 9, 2008 limitation on available e-mails:

> Results of the search of the Perez email account that were deemed responsive included a copy of email messages dating back to 12/9/08.  Email messages prior to that date were not available for the following reasons: a search of email by history involves a search of emails that have been backed-up.  Prior email messages are backed up, or copied, to a tape; when a request is made for a search of email, the tapes are restored.  In this case, the availability for the tapes on the email system containing the Perez emails allowed for recovery back to the date of 12/9/08.  *Tapes containing information prior to this date had been placed back into tape rotation and reused, causing old data to be rewritten.  Emails before 12/9/08, therefore, were not available.*  In sum, although the search encompassed the period January 1, 2001 to December 31, 2008, the records retrieved as a result of that search dated back only to December 9, 2008.

Nov. 2009 Livornese Supp. Decl. ¶ 5 (emphasis added).

9

Mr. Livornese then signed a second supplemental declaration, dated March 12, 2010, which was not provided to CREW's counsel until the day of Mr. Livornese's court-ordered deposition on July 23, 2010.  See Second Supplemental Declaration of John Livornese ("Mar. 2010 Livornese 2d Supp. Decl."), Mar. 12, 2010 [Dkt. Nos. 36-3].  Mr. Livornese stated in that declaration that he was submitting it "to further clarify the searches that were performed."  Id. ¶ 3.  He did not revise either of his two prior sworn statements that the VA only was able to review Dr. Perez's e-mails dating back to December 9, 2008.  Nor did he suggest that those statements were inaccurate in any way.  Instead, Mr. Livornese stated only that more information "clarifying that issue" would be forthcoming in a subsequent declaration by another, unnamed VA employee:

> In my prior declarations, I also discussed the date range of materials that were retrieved in the search of Norma Perez's User Hard Drive, User Server Folder, Outlook Exchange (Email) Files, and personal email folder. . . . An employee in the Office of Information and Technology's Core Infrastructure Services group and/or Network Security Operations Center . . . will provide a declaration further clarifying that issue.

Mar. 2010 Livornese 2d Supp. Decl. ¶ 6 (citation omitted).

In its renewed motion for summary judgment, filed on August 3, 2010, the VA specifically acknowledged that Mr. Livornese inadvertently had made inaccurate statements in his first two declarations.  See Mot. at 11.  As the VA described it,

> In the declaration submitted with previous summary judgment briefing, John Livornese mistakenly referred to December 9, 2008 as the date of the oldest available email messages retrieved through the electronic search of Dr. Perez's records. . . . That error led other witnesses and defense counsel to mis-describe December 9, 2008 in the same manner . . . to indicate that the emails retrieved by the electronic search of Dr. Perez's computer files dated back to December 9, 2008. . . . However, it has since become clear that Mr. Livornese (who supervised, but did not personally conduct the

10

electronic search . . . ) was mistaken regarding the date range of retrievable emails.  The Director of Core Infrastructure Services group[, Mr. Klavohn,] . . . has clarified that December 9, 2008 is the date of the oldest monthly disaster recovery tape that was available at the time of the electronic search. . . . [D]efendant's prior reference to December 9, 2008 as the date of the oldest retrievable email files was a mistake; Mr. Livornese appears to have confused the date of the disaster recovery tape with the date of the oldest files on that tape.

Id. at 11 (citations omitted).

      With its renewed motion for summary judgment, the VA submitted the declaration of Ronald Klavohn.  See Declaration of Ronald Klavohn ("Klavohn Decl."), Mar. 31, 2010 [Dkt. No. 36-3].  Mr. Klavohn signed and dated that declaration on March 31, 2010, see id. at 2 — almost a month *before* the VA produced Mr. Livornese for deposition on July 23, 2010, and only 19 days after Mr. Livornese signed his second supplemental declaration.  Although Mr. Klavohn was alluded to by Mr. Livornese during his deposition, Mr. Klavohn's declaration was not provided to CREW's counsel before or at Mr. Livornese's deposition.  Rather, it was attached to the VA's renewed motion for summary judgment, filed on August 3, 2010.

      In his March 31, 2010 declaration, Mr. Klavohn explained that — contrary to what Mr. Livornese previously *twice* stated under oath — December 9, 2008 in fact was not the date of the oldest available e-mail messages retrieved through the electronic search of Dr. Perez's records.  Klavohn Decl. ¶ 9.  Rather, December 9, 2008 was the date of the oldest monthly recovery tape that was available at the time of the electronic search, id. ¶ 7, and this backup tape "would contain any emails that were in [Dr. Perez's] mailbox on [December 9, 2008] but the actual email messages could go back further in time; in other words the emails on the tape could date back earlier than the date of the tape."  Id. ¶ 9.

11

Regarding the creation of backup tapes, Mr. Klavohn described the following process:

> Each night, Monday through Friday, a backup tape is created which contains an exact copy of each user's mailbox as it existed at the time that the backup tape was created.  Under normal operations, those tapes are kept for 15 days and then reused.  Under normal operations, once a month one tape is cycled out of the rotation and it is kept for a longer period of time, usually one year, before it is rotated back for reuse.  All our tapes are automatically created by the system and are used for disaster recovery in case of system failure or for restoration of files that are accidentally deleted.  *At the time of the electronic search for records responsive to this FOIA request, the oldest monthly backup tape available was the one dated 12/9/08.  No monthly back up tapes were created between January 2008 through November 2008.*

Klavohn Decl. ¶ 7 (emphasis added).

After CREW pointed out that Mr. Klavohn's declaration provided no explanation whatsoever as to why monthly backup tapes were not created between January 2008 and November 2008, <u>see</u> Opp. at 7, Mr. Klavohn submitted a supplemental declaration, dated September 30, 2010, in which he stated:

> I am submitting this supplemental declaration to reiterate that the absence of back-up tapes between January 2008 and November 2008 is unrelated to the CREW request that is the center of this litigation. . . . The automatic system for creating monthly back-up tapes was not in effect between January 2008 and November 2008, because the daily tapes were set to unlimited retention for use in another litigation matter (which is not a FOIA case and does not involve CREW's FOIA request).  With the unlimited retention for the back-up tapes taken between January 2008 and November 2008, the automated system for creating back-up tapes did not have the capacity to create additional monthly back-up tapes. . . . The automatic system was updated to resume the normal backup-tape rotation including creation of daily backups with a 15-day retention time and creation of monthly back-up tapes with a 1 year retention on October 28, 2008.  However, when the VA's backup software

> was programmed to resume the normal back-up tape rotation, the
> software rendered all of the daily, unlimited retention, backup tapes
> created prior to October 28, 2008 unusable.  The unusability of
> those tapes resulted from the way in which the backup software
> sets new rotation schedules; the nature of the software rendered
> those older back-up tapes unusable. . . . The first monthly back-up
> tape created in 2008 was made on December 9, 2008, after the
> back-up rotation was set back to normal operational mode.

Supplemental Declaration of Ronald Klavohn ("Klavohn Supp. Decl.") ¶¶ 3, 5, 6, Sept. 30, 2010
[Dkt. No. 40-5].

Mr. Livornese submitted a fourth declaration, dated September 29, 2010, over a
year after his first declaration in this case, in which he finally retracts his prior inaccurate
statements and confirms that "December 9, 2008 is the date of the oldest back-up tape that was
searched," not the date of the oldest retrievable e-mails.  See Supplemental Declaration of John
Livornese ("Sept. 2010 Livornese 4th Decl.") ¶ 8, Sept. 29, 2010.  Mr. Livornese explained in
that declaration that his "prior testimony was based upon an error in the report from OIT, and that
the . . . electronic search recovered a broader range of records than [he] initially believed."  Id.

According to CREW, these declarations establish that the VA improperly
destroyed responsive records.  See Opp. at 9; Pl. Surreply at4.  And relying on the court of
appeals' decision in Chambers v. U.S. Department of the Interior, 568 F.3d 998 (D.C. Cir. 2009),
CREW argues that the VA's improper destruction of responsive records "bears on the issue of
whether the agency conducted an adequate search."  Opp. at 9.  Moreover, "in light of the [VA's]
conduct in this case," CREW requests that the Court (1) "state clearly for the VA the obligations
of federal agencies to preserve evidence and impose litigation holds for responsive materials
upon receipt of FOIA requests"; (2) approve the deposition, at the VA's expense, of Dr. Perez

and possibly the recipients of her March 20, 2008 e-mail, as well as the deposition of Mr.

Klavohn for purposes of obtaining discovery regarding the circumstances of the suspension of

normal operations in saving backup tapes; and (3) order the VA "to attempt to reconstruct the

destroyed records or information contained in the destroyed records[.]" Opp. at 11-12.

   Upon consideration of the parties' papers, the attached declarations and exhibits,

the relevant legal authorities, and the entire record in this case, the Court will grant in part

CREW's second request; will deny without prejudice CREW's third request; and will deny

CREW's first request.  Because the Court concludes that limited discovery should proceed, the

Court also will deny without prejudice the VA's renewed motion for summary judgment.[2]

### B.  CREW's Requests for Discovery and Record Reconstruction

   The Court is deeply troubled (1) that Mr. Livornese, prior to his court-ordered

deposition on July 23, 2010, made inaccurate statements in two declarations; (2) that Mr.

Livornese signed a second supplemental declaration on March 12, 2010 that was not provided to

CREW's counsel until four months later, at Mr. Livornese's court-ordered deposition on July 23,

2010; (3) that Mr. Livornese's second supplemental declaration did not correct his prior

inaccurate statements — or even suggest that they were inaccurate in any way — but simply

---

[2] CREW requests that the Court award it attorneys' fees and costs incurred in this
case generally, as well as costs incurred in taking the deposition of Mr. Livornese.  See Opp.
at 15, 20.  Because final judgment is not appropriate at this stage, and because CREW has not
articulated any need for an interim award of fees, the Court concludes that CREW's request for
fees is premature.  See Beltranena v. Clinton, 770 F. Supp. 2d 175, 187 (D.D.C. 2011) (citing
Hussain v. U.S. Department of Homeland Sec., 674 F. Supp. 2d 260, 272-73 (D.D.C. 2009)).
The VA will, however, be required to bear the costs of the depositions ordered by this Opinion
and accompanying Order.

stated that another, unnamed VA employee would "provide a declaration further clarifying that issue," Mar. 2010 Livornese 2d Supp. Decl. ¶ 6; (4) that the VA did not provide Mr. Klavohn's declaration, dated March 31, 2010, to CREW's counsel at the July 23, 2010 deposition of Mr. Livornese, even though the substance of the undisclosed declaration was discussed by Mr. Livornese at the deposition and counsel for the VA certainly knew of the existence of the Klavohn declaration; and (5) that even Mr. Klavohn's first declaration was incomplete and had to be supplemented after its deficiencies were pointed out by CREW.

The Court is not yet ready to conclude that the myriad declarations, the way they evolved and changed, and the timing of their disclosure means that the VA improperly destroyed responsive records.  Nor is the Court ready to order at this time the VA to attempt to reconstruct any of its records, since such an order must be based on a finding of improper document destruction.  See Landmark Legal Found. v. EPA, 272 F. Supp. 2d 59, 67 (D.D.C. 2003) ("Reconstruction of . . . destroyed documents to the extent possible is an appropriate remedy for bad faith document destruction."); Cal-Almond, Inc. v. U.S. Department of Agric., 960 F.2d 105, 109 (9th Cir. 1992) ("Absent a showing that the government has improperly destroyed agency records, FOIA does not require these records to be recreated.") (internal quotations omitted).

But the Court does believe that counsel for the VA decided as a matter of litigation tactics not to be forthcoming by withholding relevant evidence until *after* the limited discovery ordered by this Court was concluded: Although Mr. Livornese signed his second supplemental declaration on March 12, 2010, it was not provided to CREW until the date of his court-ordered deposition, on July 23, 2010.  Although Mr. Klavohn signed his first declaration on March 31, 2010, it was not provided to CREW until *after* Mr. Livornese's deposition concluded.

These litigation tactics — which at the very least contradict the fundamental purpose of the FOIA — rendered Mr. Livornese's deposition at best incomplete, and perhaps useless.  The Court therefore agrees with CREW that it should be permitted to take additional discovery for the purpose of determining whether the explanation for the current state of affairs is document destruction, incompetence, or something in between.  It is clear to the Court that this discovery will be central to any subsequent dispositive motion and will assist the Court in resolving any such motion once filed.

Consequently, in light of its broad discretion to manage discovery, see, e.g., Budick v. Department of the Army, 742 F. Supp. 2d 20, 39 (D.D.C. 2010), the Court will grant in part CREW's second request: that is, it will approve the deposition of Mr. Klavohn and an additional deposition of Mr. Livornese, both at the VA's expense, for the purpose of obtaining discovery regarding the circumstances of the suspension of normal operations in saving backup tapes as it relates to this case and whether the explanation for the suspension is document destruction or something else.  The Court will not, at this time, approve the deposition of Dr. Perez or the recipients of her March 20, 2008 e-mail; CREW, however, may make an appropriate motion for such discovery after taking the depositions of Mr. Klavohn and Mr. Livornese.

\*      \*      \*

The Court will deny CREW's request to "state clearly for the VA the obligations of federal agencies to preserve evidence and impose litigation holds for responsive materials upon receipt of FOIA requests."  Opp. at 11.  In its opposition to that request, the VA argues that "CREW has not cited a single case that holds that agencies must preserve, restore, and search

disaster recovery tapes whenever a pending FOIA request seeks electronic records." Reply at 13. According to the VA, "there is no legal foundation, nor legitimate reason, for imposing such a sweeping new burden upon federal agencies." Id.  Whether the VA is correct or not, there is no claim for such relief in CREW's complaint and, even if there were, it is not clear that an FOIA lawsuit is the proper mechanism through which to litigate such a claim.[3]

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny without prejudice the defendant's renewed motion for summary judgment [Dkt. No. 36] and will grant in part the plaintiff's request for discovery.  An Order consistent with this Opinion issued on September 28, 2011.  An Order specifying the terms of the permissible discovery, as set forth in this Opinion, shall issue this same day.

SO ORDERED.

/s/
_____
PAUL L. FRIEDMAN
DATE:  December 15, 2011                    United States District Judge

---

[3]      CREW's request for such declaratory relief relies on an extension of the court of appeals' holding in Chambers v. U.S. Department of the Interior, 568 F.3d 998 (D.C. Cir. 2009) — a case that dealt with the deliberate destruction of a specific document — to require that once CREW made its FOIA request, the VA then had an obligation to preserve backup tapes.  The court in Chambers did not set forth such a requirement on agencies.  Where a plaintiff contends that an agency failed to show the adequacy of its search because it did not "address . . . archived emails and backup tapes," the court of appeals has concluded that it is reasonable to expect an agency "to inform the court and plaintiff[] whether backup tapes of any potential relevance exist; if so whether their responsive material is reasonably likely to add to that already delivered; and, if these questions are answered affirmatively, whether there is any practical obstacle to searching them." Ancient Coin Collectors Guild v. U.S. Department of State, 641 F.3d 504, 514 (D.C. Cir. 2011).  But to this point the court of appeals has not set forth a rule requiring that an agency always must preserve backup tapes upon the making of a FOIA request.