UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTION, )
)
Plaintiff, )
)
v. ) Civil Action No. 08-1481 (PLF)
)
U.S. DEPARTMENT OF VETERANS )
AFFAIRS, )
)
Defendant. )

---

OPINION

This Freedom of Information Act case is before the Court on the defendant's second renewed motion for summary judgment and motion for reconsideration of this Court's Opinion dated December 15, 2011. Upon consideration of the parties' papers, the attached declarations and exhibits, the relevant legal authorities, and the entire record in this case, the Court will grant the defendant's motion for summary judgment and deny the motion for reconsideration as moot.[1] In addition, the defendant will be ordered to show cause in writing why a sanction, in the form of attorneys' fees, should not be entered.

---

[1] The papers reviewed in connection with the defendant's renewed motion for summary judgment and motion for reconsideration include: the plaintiff's complaint ("Compl.") [Dkt. No. 1]; the defendant's motion for summary judgment ("First MSJ") [Dkt. No. 16]; the plaintiff's opposition to the defendant's motion for summary judgment ("Opp. to First MSJ") [Dkt. No. 18]; the defendant's reply in support of its motion for summary judgment ("First MSJ Reply") [Dkt. No. 21]; the plaintiff's supplemental memorandum in opposition to the defendant's motion for summary judgment ("Pl. Surreply to First MSJ") [Dkt. No. 23]; the defendant's first notice of supplemental release ("Def. First Supp. Release") [Dkt. No. 24]; the defendant's second notice of supplemental release ("Def. Second Supp. Release") [Dkt. No. 30]; the plaintiff's response to the defendant's notice of supplemental release ("Pl. Response to Def.

I. BACKGROUND

The facts of this case are recounted in detail in this Court's prior Opinion dated December 15, 2011. Op. at 2-6, reported at 828 F. Supp. 2d 325. They are summarized here as relevant.

A. *The FOIA Request*

In May 2008, an e-mail from Dr. Norma J. Perez, at that time employed as a psychologist and coordinator of the post-traumatic stress disorder ("PTSD") clinical team at defendant Department of Veterans Affairs' ("VA") medical center in Temple, Texas, was leaked to the public. See Mot. Ex. 2, Office of the Inspector General Report No. 08-02089-59, at 4 [Dkt. No. 65-2]. That e-mail was widely interpreted as suggesting that VA employees should refrain from giving PTSD diagnoses in order to cut costs. Id. It quickly became the subject of a congressional hearing. Id.; see generally Mot. Ex. 1, Statement of Dr. Norma J. Perez, Senate Committee on Veterans' Affairs, June 4, 2008 [Dkt. No. 65-1].

On the heels of the e-mail leak, plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") submitted a FOIA request to the VA for records relating to "guidance" on PTSD diagnoses. Compl. Ex. 1, Letter from Anne L. Weismann to the VA at 1, May 14, 2008 [Dkt. No. 1-2]. The VA denied CREW's document request, claiming that it was "overly

---

Supp. Release") [Dkt. No. 51]; this Court's Opinion dated December 15, 2011 ("Op."), reported at 828 F. Supp. 2d 325 [Dkt. No. 54]; the defendant's motion for reconsideration ("Recon. Mot.") [Dkt. No. 55]; the plaintiff's memorandum in opposition to the defendant's motion for reconsideration ("Recon. Opp.") [Dkt. No. 57]; the defendant's reply in support of its motion for reconsideration ("Recon. Reply") [Dkt. No. 58]; the defendant's second renewed motion for summary judgment ("Mot.") [Dkt. No. 65]; the defendant's statement of material facts as to which there is no genuine dispute ("Def. Statement") [Dkt. No. 65]; the plaintiff's opposition to the defendant's second renewed motion for summary judgment ("Opp.") [Dkt. No. 67]; the plaintiff's statement of material facts as to which there is no genuine issue ("Pl. Statement") [Dkt. No. 67]; and the defendant's reply in support of its second renewed motion for summary judgment ("Reply") [Dkt. No. 71].

broad" and imposed "an extremely burdensome search effort." Compl. ¶ 18. The VA also denied CREW's request for a public interest fee waiver. Id. CREW appealed administratively, see id. ¶ 19, but the VA failed to respond or produce any documents. See id. ¶ 22. Consequently, on August 27, 2008, CREW filed the instant complaint in this Court under the FOIA, claiming: (1) that the VA failed to produce requested records; and (2) that the VA improperly denied CREW's request for a fee waiver. See id. ¶ 2.[2]

*B. Procedural History*

On September 23, 2009, the VA filed a motion for summary judgment, asserting that it had performed an adequate search and had released to CREW all records responsive to CREW's request. See First MSJ at 1. CREW opposed the VA's motion, arguing that, although Dr. Perez's e-mail was dated March 20, 2008, the VA's declarations revealed that its search of its electronic records "did not reach back to that time, but rather included only e-mail messages dating back to December 9, 2008." Opp. to First MSJ at 9. In support of its position, CREW pointed to the declaration of John Livornese, the Director of FOIA Service for the VA, in which Mr. Livornese stated: "As a result of the search [of Dr. Perez's records], two files were provided by VA Exchange Administrators — a snapshot of her current mailbox and a copy of e-mail messages dating back to 12/9/08, which contained one or more search terms and were deemed responsive." Declaration of John Livornese ("Sept. 2009 Livornese Decl.") ¶ 8, Sept. 18, 2009 [Dkt. Nos. 16-4, 36-3].

The VA subsequently explained in reply that it was "unable to recover e-mails created before December 9, 2008 because the VA's regular rotation of backup tapes precluded

---

[2] CREW's second claim regarding the fee waiver was dismissed as moot on June 6, 2009, because the VA reversed its position and granted CREW's fee waiver request. See Order at 1, June 6, 2009 [Dkt. No. 12].

the recovery of older e-mail messages." First MSJ Reply at 9. In a supplemental declaration dated November 5, 2009, Mr. Livornese further elaborated that "although the search encompassed the period January 1, 2001 to December 31, 2008, the records retrieved as a result of that search dated back only to December 9, 2008." Supplemental Declaration of John Livornese ("Nov. 2009 Livornese Supp. Decl.") ¶ 5, Nov. 5, 2009 [Dkt. Nos. 21-1, 36-3].

Far from putting this issue to rest, CREW considered the VA's reply a "revelation[] that the VA . . . destroyed documents clearly responsive to CREW's . . . FOIA . . . request . . . ." Pl. Surreply to First MSJ at 1. According to CREW, Mr. Livornese's supplemental declaration established that the "VA destroyed potentially responsive records *after* CREW made its FOIA request in this matter on May 14, 2008 — a request that expressly sought e-mails and other electronic records — and *after* CREW filed its lawsuit on August 27, 2008 in this case." Id. at 2-3.

After briefing on the VA's motion for summary judgment was complete, the VA made two supplemental releases of documents to CREW, containing, among other things, a copy of Dr. Perez's March 20, 2008 e-mail. See Def. First Supp. Release at 1; Def. Second Supp. Release at 1-2. The VA then withdrew its motion for summary judgment with the intent of filing a renewed motion that would consolidate all issues into a single set of briefs. See Notice of Withdrawal of Motion at 1, May 27, 2010 [Dkt. No. 32].

Before the parties proceeded with a second round of summary judgment briefing, however, another issue arose: CREW sought the deposition of Mr. Livornese "to obtain information on the unexplained issue of destruction of electronic records . . . ." Opp. to Mot. for Protective Order at 6, July 6, 2010 [Dkt. No. 34]. The VA sought a protective order precluding this deposition. See Mot. for Protective Order at 1, July 1, 2010 [Dkt. No. 33]. The VA argued

4

that such discovery was inappropriate in this FOIA case; moreover, the VA asserted that CREW's concerns likely would be addressed in the VA's renewed summary judgment motion. See id. at 4-5. As the VA stated, its renewed motion would include "a declaration from Mr. Livornese and an IT employee who was more directly involved with the electronic search," which would address "the extent to which backup tapes were searched." Id. at 5 n.2.

The Court denied the VA's motion for a protective order, concluding that limited discovery through Mr. Livornese's deposition likely would assist the Court in resolving the issues in this case. See Memorandum Op. & Order at 1, July 14, 2010 [Dkt. No. 35]. Thus, the parties proceeded with Mr. Livornese's deposition, which took place on July 23, 2010.

Soon thereafter, on August 3, 2010, the VA filed its renewed motion for summary judgment. This Court denied that motion without prejudice and granted in part the plaintiff's motion for discovery, which was explained in this Court's Opinion dated December 15, 2011. Op. at 1, 828 F. Supp. 2d at 326. In that Opinion, the Court stated it "believe[d] that counsel for the VA decided as a matter of litigation tactics not to be forthcoming by withholding relevant evidence until *after* the limited discovery order by this Court was concluded." Id. at 15, 828 F. Supp. 2d at 334. Specifically, the Court found: "(1) that Mr. Livornese, prior to his court-ordered deposition on July 23, 2010, made inaccurate statements in two declarations; (2) that Mr. Livornese signed a second supplemental declaration on March 12, 2010 that was not provided to CREW's counsel until four months later, at Mr. Livornese's court-ordered deposition on July 23, 2010; (3) that Mr. Livornese's second supplemental declaration did not correct his prior inaccurate statements — or even suggest that they were inaccurate in any way — but simply stated that another, unnamed VA employee would 'provide a declaration further clarifying that issue,' Mar. 2010 Livornese 2d Supp. Decl. ¶ 6; (4) that the VA did not provide Mr. Klavohn's

5

declaration, dated March 31, 2010, to CREW's counsel at the July 23, 2010 deposition of Mr. Livornese, even though the substance of the undisclosed declaration was discussed by Mr. Livornese at the deposition and counsel for the VA certainly knew of the existence of the Klavohn declaration; and (5) that even Mr. Klavohn's first declaration was incomplete and had to be supplemented after its deficiencies were pointed out by CREW." Op. at 14-15, 828 F. Supp. 2d at 333-34.[3] Due to those tactics and the confusion regarding the potential destruction of documents, the Court granted CREW's request to depose Mr. Klavohn and re-depose Mr. Livornese "for the purpose of obtaining discovery regarding the circumstances of the suspension of normal operations in saving backup tapes as it relates to this case and whether the explanation for the suspension is document destruction or something else." Id. at 16, 828 F. Supp. 2d at 334.

On January 6, 2012, the VA filed this motion for reconsideration of the Court's December 15, 2011 Opinion, arguing that it "appear[ed] to reflect significant 'error[s] of apprehension.'" Recon. Mot. at 2. Nevertheless, CREW deposed Mr. Klavohn on January 26, 2012, and re-deposed Mr. Livornese on February 16, 2012.

On April 23, 2012, the VA filed this renewed motion for summary judgment, arguing that its search was adequate and had produced all responsive documents.

### C. The VA's Search for Responsive Documents

In support of its renewed motion for summary judgment, the VA has provided 14 declarations describing their search for responsive documents. According to these declarations, the VA determined that the Office of the Inspector General and four departments within its Central Office were most likely to have responsive records: the Veterans Health Administration;

---

[3] Nothing presented in defendant's motion for reconsideration has persuaded the Court to alter its views.

the Veterans Benefits Administration; the Board of Veterans' Appeals; and the Office of the Executive Secretary. Def. Statement ¶ 1. The Office of Management was also contacted, but it independently concluded that it was unlikely to possess responsive documents. Id. ¶ 2. Each listed office conducted an electronic and physical search for responsive documents with the following results:

1. The Office of the Inspector General released a report detailing its investigation of Dr. Perez's e-mail on November 5, 2009, but concluded that it did not have any other responsive documents. Id. ¶ 5.

2. The Veterans Health Administration searched four sub-departments within its own Central Office, as well as every VA Medical Center, including the Temple, Texas facility where Dr. Perez worked. Id. ¶¶ 6-9. 528 pages of documents were released on November 2, 2008, 197 pages on December 12, 2008, five CD-ROMs of training materials on May 6, 2009, and 251 pages on September 11, 2009. Id. ¶ 10.

3. The Veterans Benefits Administration released six documents totaling 31 pages on October 14, 2008. Id. ¶ 3.

4. The Board of Veterans' Appeals did not discover any responsive documents, but released a series of handouts made available during training sessions regarding the legal adjudication of PTSD and psychiatric disorder claims on December 19, 2008. Id. ¶ 4.

5. The Office of the Executive Secretary forwarded all responsive documents discovered in its search to the Veterans Health Administration, which included those documents in its own releases. Id. ¶¶ 24-25.[4]

The VA did not withhold any documents from these releases and made only a few redactions pursuant to Exemption 6 of the FOIA. Mot. at 1.

In addition to these searches, the VA's Office of Information Technology conducted a forensic electronic search of Dr. Perez's e-mail in-box and the oldest available monthly disaster recovery backup tape, dated December 9, 2008. Def. Statement ¶¶ 11-16. That

---

[4] The following search terms, with variants, were used: compensation; pension; post-traumatic stress disorder; PTSD; diagnose or diagnosis; assessment; rule out; adjustment disorder; compensate; testing; instruct; guidance; appeal(s); expense(s); claim(s); and process. Livornese Decl. ¶ 10.

backup tape contained e-mails from Dr. Perez dated as early as June and July 2007, when she began working for the VA. Id. ¶ 15.[5] All pre-December 2008 backup tapes were rendered unreadable in October 2008 by a software reset. Id. ¶ 22. After CREW objected that the March 2008 Dr. Perez e-mail that instigated the FOIA request was not found, the VA also searched the in-boxes of the eight recipients of that e-mail. Id. ¶ 30. The e-mail was located and released on March 25, 2010. Id. ¶ 31. In February 2010, Dr. Perez also searched through her personal files, and several responsive non-electronic documents were released on April 28, 2010. Id. ¶¶ 29, 31.

## II. LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). The Court grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" Students Against Genocide v. U.S. Dept. of State, 257 F. 3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. C.I.A., 607 F.2d 339, 352 (D.C. Cir. 1978)).

To establish that its search for responsive records was adequate, an agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dept. of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see also Ancient Coin Collectors

---

[5] Although the subject of much confusion, it now has been clarified that no older backup tape was available due to a litigation hold unrelated to this case. Def. Statement ¶¶ 19-21.

8

Guild v. U.S. Dept. of State, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (noting an agency's FOIA obligations are fulfilled "if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents'"). A search need not be exhaustive, Saldana v. F.B.I., 715 F. Supp. 2d 24, 26 (D.D.C. 2010), and an agency's failure to find a particular document does not undermine the determination that the search was adequate. Wilbur v. C.I.A., 355 F.3d 675, 678 (D.C. Cir. 2004); Nation Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). The adequacy of a search therefore is not determined by its results, but by the method of the search itself, Weisberg v. U.S. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); see also Saldana v. F.B.I., 715 F. Supp. 2d at 25-26, and a court is guided in this determination by principles of reasonableness. Oglesby v. U.S. Dept. of the Army, 920 F.2d at 68.

An agency can satisfy its burden with supporting affidavits or declarations if they are "relatively detailed and non-conclusory," SafeCard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1200 (D.C. Cir. 1991), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see Ancient Coin Collectors Guild v. U.S. Dept. of State, 641 F.3d at 514. Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Lasko v. U.S. Dept. of Justice, 684 F. Supp. 2d 120, 127 (D.D.C. 2010) (quoting SafeCard Servs., Inc. v. S.E.C., 926 F.2d at 1200).

III.  DISCUSSION

The VA maintains it is entitled to summary judgment because it now has demonstrated that it conducted an adequate search for responsive records and that the redactions made were proper under Exemption 6.  The Court agrees.[6]

*A.  Adequacy of the Search*

The VA has submitted 14 declarations detailing its search for responsive documents across four departments and the Office of the Inspector General.  See Mot. Exs. 4-17.  These declarations demonstrate that the VA identified the offices most likely to possess responsive documents, used search terms reasonably calculated to uncover those documents, and did not withhold any responsive documents discovered by the search.  See supra at 6-8.[7]  When CREW objected that the March 2008 Dr. Perez e-mail was missing from the search results, the VA conducted additional electronic searches of Dr. Perez's e-mail in-box, the oldest available backup tape, and the e-mail in-boxes of the eight recipients of Dr. Perez's March 2008 e-mail.  See id. at 7-8.  That e-mail was located and released to CREW along with responsive documents from Dr. Perez's personal files.  Id.  Based on these declarations and the whole record, the Court finds that the VA has met its burden to demonstrate a "good faith effort to conduct a search for

---

[6]  CREW does not challenge the VA's redactions under Exemption 6.  Opp. at 12 n.2.  The Court therefore only considers the adequacy of the search.

[7]  Although the VA's production was delayed, both by the VA's litigation tactics and its rolling haphazard production, delay in and of itself "does not render the search inadequate."  Sellers v. U.S. Dept. of Justice, 684 F. Supp. 2d 149, 157 (D.D.C. 2010); see also Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982) ("However fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform").

the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dept. of the Army, 920 F.2d at 68.

CREW does not challenge which offices participated in the search or the specific search terms. Instead, it claims that the search was inadequate because: (1) the search failed to produce the March 2008 e-mail by Dr. Perez that instigated the FOIA request; (2) the VA "failed to follow evidentiary leads" and search additional backup tapes to uncover Dr. Perez's e-mails; (3) language from the forensic report of Dr. Perez's e-mail suggests that no e-mails were available before December 9, 2008; and (4) the VA's repeated late disclosures, retractions, corrections, or clarifications of statements indicate a "minimal effort to search for records." Opp. at 6-12.[8] Each of CREW's arguments lacks merit.

First, the fact that a particular e-mail was not uncovered initially, but only discovered after a supplemental search, is irrelevant because "the adequacy of a FOIA search is generally not determined by the fruits of the search," no matter how "intuitively unlikely" those fruits may be. Ancient Coin Collectors Guild v. U.S. Dept. of State, 641 F.3d at 514. "[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." Id. (quoting Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003)); see also Bey v. U.S. Dept. of Justice, 518 F. Supp. 2d 14, 21 (D.D.C. 2007) (quoting Miller v. U.S. Dept. of State, 779 F.2d 1378, 1385 (8th Cir. 1985)) (an agency "is not required by [the FOIA] to account for documents which the requester has in some way identified if it has made a diligent search for those documents in the places in which they might be expected to be found"). To the extent that the plaintiff suggests that the absence of the Dr.

---

[8] CREW also speculates that "recent revelations" regarding the VA's treatment and diagnosis of PTSD indicates that the search was inadequate. But "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." SafeCard Servs., Inc v. S.E.C., 926 F.2d at 1201.

Perez e-mail indicates other responsive documents remain undiscovered, such speculation is insufficient to raise a genuine question about the adequacy of the search. See Shapiro v. U.S. Dept. of Justice, 2014 WL 953270, at *6 (D.D.C. Mar. 12, 2014) (quoting SafeCard Servs., Inc. v. S.E.C., 926 F.2d at 1200) ("Agency declarations are accorded 'a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents'").

Second, the Court cannot conclude that the VA was required to search additional backup tapes because the VA's declarations demonstrate that doing so would have been "impossible, impractical, or futile." Ancient Coin Collectors Guild v. U.S. Dept. of State, 641 F.3d at 514 (requiring State Dept. to address whether searching additional e-mail archives and backup tapes "would be impossible, impractical, or futile"). The VA has sufficiently demonstrated that monthly backup tapes were not created between August 2007 and October 2008 due to an unrelated litigation hold and that pre-December 2008 daily backup tapes were rendered "unreadable" in October 2008 due to a software reset when that hold ended. Def. Statement ¶¶ 19-22; see also supra at 7-8. Searching additional backup tapes is particularly unnecessary because the VA included its earliest available backup tape, from December 2008, in its search, already surpassing the requirements imposed by some other courts. See, e.g., Safety Research & Strategies, Inc. v. U.S. Dept. of Transp., 903 F. Supp. 2d 1, 7 (D.D.C. 2012) (quoting Stewart v. U.S. Dept. of Interior, 554 F.3d 1236, 1243-44 (10th Cir. 2009)) (finding that searching backup tapes would have been "impossible, impractical, or futile" where the files were "not organized for retrieval of individual documents or files, but rather for purposes of disaster recovery").

Third, CREW's argument regarding the time period of the forensic search is directly contradicted by the VA's own declarations. See supra at 7. CREW's argument, however, appears to stem from the confusion and misapprehension that plagued the VA's earlier declarations in this case: the backup tape at issue was *created* in December 2008, but *contains* e-mails predating December 2008. Def. Statement ¶ 15. Declarations from Mr. Klavohn and Mr. Timothy Graham, the Veterans Health Administration's FOIA Officer, now conclusively demonstrate that fact. Mot. Ex. 8, Third Declaration of Ronald Klavohn ¶ 28, Apr. 17, 2012 [Dkt. No. 65-8]; Mot. Ex. 5, Declaration of Timothy H. Graham ¶ 25, Apr. 23, 2012 [Dkt. No. 65-5].

Lastly, the VA's conduct in this litigation does not raise an inference of bad faith or inadequacy as to the search. See Voinche v. F.B.I., 412 F. Supp. 2d 60, 72 (D.D.C. 2006) (quoting Carney v. U.S. Dept. of Justice, 19 F.3d 807, 812 (2d Cir. 1994)) ("In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate"). Indeed, the plaintiff does not argue the VA withheld documents in bad faith or that the declarations submitted are inaccurate or false. Nor does the plaintiff's assertion that "[t]he VA's mishandling of this matter" resulted in "repeated late disclosures of records" indicate bad faith with regard to the search. See Competitive Enter. Inst. V. N.A.S.A., 989 F. Supp. 2d 74, 88 (D.D.C. 2013) ("Delays in responding to FOIA requests are generally not sufficient to show agency bad faith").

13

### B. Document Deletion

CREW appears to have abandoned its prior argument that the VA intentionally destroyed pre-December 2008 backup tapes. Compare Pl. Surreply to First MSJ at 1 with Opp. at 10. Instead, CREW now alleges that the absence of the March and April 2008 Dr. Perez e-mails indicates they were "deleted prior to 12/9/08 in a purposeful attempt to destroy harmful evidence." Opp. at 10. Dr. Perez has denied any intentional deletion, however, and the e-mails in question ultimately were produced by the VA, although discovered in a recipient's e-mail in-box. See Mot. Ex. 12, Supplemental Declaration of Norma J. Perez ¶ 6, April 6, 2011 [Dkt. No. 65-12]; see Bey v. U.S. Dept. of Justice, 518 F. Supp. 2d at 21 (quoting Miller v. U.S. Dept. of State, 779 F.2d at 1385) (noting that "[t]he fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency retained it"). Moreover, CREW's argument is negated by the fact that the VA has produced the allegedly destroyed documents. Landmark Legal Found. V. E.P.A., 272 F. Supp. 2d 59, 67 (D.D.C. 2003) ("Reconstruction of the destroyed documents to the extent possible is an appropriate remedy for bad faith document destruction").

### C. Sanctions and/or Attorneys' Fees for the Multiplication of Proceedings

As this Court stated in its Opinion dated December 15, 2011, it is deeply troubled by the VA's litigation conduct in the case: inaccurate declarations were left uncorrected for months despite the fact that already-executed declarations to the contrary existed but were withheld, apparently as a litigation tactic. Nothing stated in defendant's motion for reconsideration or other filings has done anything to mitigate that concern. The VA therefore will be ordered to show cause why a sanction under 28 U.S.C. § 1927, in the form of attorneys' fees and costs, should not be awarded for the additional time and effort CREW's attorneys were

required to expend due to the VA's tactics, including, but certainly not limited to, the time spent preparing for and deposing Mr. Livornese while the VA withheld Mr. Klavohn's declaration.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant the defendant's motion for summary judgment and deny the motion for reconsideration as moot.  The defendant will be ordered to show cause in writing why a sanction, in the form of attorneys' fees, should not be entered.  Two separate Orders consistent with this Opinion shall issue this same day.

/s/_____
PAUL L. FRIEDMAN
DATE:  September 24, 2014         United States District Court