**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
CITIZENS FOR RESPONSIBILITY AND        :
ETHICS IN WASHINGTON                   :
                                       :
            Plaintiff,                 :
                                       :
      v.                               :   Civil Action No.08-1481 (PLF)
                                       :
U.S. DEPARTMENT OF VETERANS            :
AFFAIRS,                               :
                                       :
            Defendant.                 :
_____:

**MOTION BY PLAINTIFF CREW FOR**
**AN AWARD OF ATTORNEYS FEES AND COSTS**

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") hereby moves the

court for an award of attorneys fees and costs in this matter under the Freedom of Information

Act, 5 U.S.C. Sec. 552(a)(4)(E)(i).  Pursuant to local rule 7(m) CREW has consulted with

counsel for defendant Department of Veteran Affairs ("VA") as to the defendant's position on

this motion and defendant's counsel states the VA does not yet have a position on this motion,

and will review the filed motion to determine VA's position.

This motion is supported by CREW's memorandum in support of the motion together with its

exhibits, all filed herewith.   CREW respectfully moves the court to grant its motion for an award

of attorneys fees and costs in this case as set forth in the attached memorandum.

Respectfully submitted,

  _/s/ Daniel S. Alcorn_____
Daniel S. Alcorn
(D.C. Bar No.  383267)
Counsel for Plaintiff CREW
1335 Ballantrae Lane
McLean, VA  22101

1

(703) 442-0704

Anne L. Weismann
(D.C. Bar No. 298190)
Citizens for Responsibility and
        Ethics in Washington
409 7th Street, N.W.
Suite 300
Washington, D.C.  20004
Phone: (202) 408-5565
Fax: (202) 588-5020

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————
CITIZENS FOR RESPONSIBILITY AND   :
ETHICS IN WASHINGTON                       :
                                                  :
              Plaintiff,                   :
                                                  :
        v.                        :   Civil Action No.08-1481 (PLF)
                                                  :
U.S. DEPARTMENT OF VETERANS     :
AFFAIRS,                              :
                                                :
            Defendant.             :
———————————————————:

**MEMORANDUM IN SUPPORT OF MOTION BY PLAINTIFF CREW FOR
AN AWARD OF ATTORNEYS' FEES AND COSTS**

The Freedom of Information Act  ("FOIA") provides that courts "may assess against the

United States reasonable attorney fees and other litigation costs reasonably incurred in any case .

. . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).  For years

the U.S. Department of Veterans Affairs ("VA"), defendant in the above-captioned action, has

turned a blind eye to the growing problem of post-traumatic stress syndrome ("PTSD") in

soldiers returning from war zones.  Years of newspaper articles and hundreds of pages of

congressional hearing testimony document the appalling way our veterans have been treated,

with traumatic brain injuries and PTSD ignored in the interest of saving money.  This case

concerns a particularly dark chapter in this story, when a VA medical professional memorialized

in an email to colleagues the practice of providing alternative and less costly diagnoses than

PTSD.  Sadly, even when this was brought to light through a congressional hearing, this

abhorrent practice continued.

To address this problem, plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed a Freedom of Information Act ("FOIA") request seeking documentation of this event and the underlying practice to which it refers.  The consistent response from the VA in the years that followed has been to deny any problem exists, deny access to records, and to obfuscate on the state of the record and the deficiencies in the agency's search for responsive records. Despite the VA's resistance, CREW has prevailed in obtaining the requested records in this litigation.   The VA's conduct and CREW's success entitle CREW to a full recovery of its attorneys' fees and costs in this matter.

## FACTUAL BACKGROUND

By now, many of the facts of this case are well known to the Court and summarized in the Court's Opinions of September 24, 2014 and December 15, 2011 (Dkt. 73 and 54) .  For purposes of this motion, CREW sets forth the most salient facts below.

CREW brought this case after news reports of a March 20, 2008 email authored by Norma Perez, who described herself as coordinator of the post-traumatic stress disorder clinical team at the Temple, Texas Veterans Healthcare facility.  Perez Dec., Exh. 12 to VA Mem. Dkt. 65.  Ms. Perez's email states in pertinent part, "Given that we are having more and more compensation seeking veterans, I'd like to suggest that you refrain from giving a diagnosis of PTSD straight out.  Consider a diagnosis of adjustment disorder, R/O PTSD."  Graham Decl., Exh. 5 to VA Mem. Dkt. 65, page 38 of 53.  This internal VA email became the subject of a congressional hearing on June 4, 2008, resulting in extensive media coverage.  Exhibits 3 and 5 to Exhibit 4 of Complaint.

Upon learning of the existence of this email, CREW sent a FOIA request to the VA on May 14, 2008, requesting "all guidance given to any VA staff, consultants and/or other

4

recipient(s) of federal funds regarding the diagnosis of post traumatic stress disorder . . . in veterans." Exhibit 1 to Complaint. CREW further clarified it was seeking "guidance on (1) whether or not to make a diagnosis of PTSD; (2) alternative diagnoses that should or could be made in lieu of diagnosing PTSD; (3) time or expense factors bearing on a diagnosis of PTSD; and (4) guidance on PTSD diagnoses as they relate to veteran appeals." *Id*. CREW also sought a waiver of fees associated with processing its request. *Id.* at 2-3.

In what was to become a pattern of response, the VA denied CREW's fee waiver request on June 5, 2008 (*see* Exhibit 3 to Complaint), and failed to respond to the administrative appeal of this denial CREW filed five days later. Having exhausted all available administrative remedies, CREW filed suit on August 27, 2008. After CREW expended time and resources filing a motion for partial summary judgment on its entitlement to a fee waiver, the VA changed its mind and announced in its response to CREW's motion that the agency was now granting CREW a full public interest fee waiver. (Dkt. 7, p. 1).

Thereafter, the VA began producing responsive documents, although remarkably the email from Ms. Perez was not part of that production. On September 23, 2009, the VA filed its first motion for summary judgment, in which it claimed to have performed an adequate search and produced to CREW all responsive records (Dkt. 16). In opposing this motion, CREW identified the myriad ways in which the agency's search was inadequate including, *inter alia*, the VA's failure to search for electronic records dating back to March 20, 2008, the date of Ms. Perez's revelatory email. In response, the VA claimed an inability to recover emails created before December 9, 2008, due to the VA's regular rotation of backup tapes. As part of its explanation of this practice, the VA offered a supplemental declaration from John Livornese revealing the VA had destroyed – by writing over – backup tapes pre-dating December 9, 2008.

(Dkt. 21-2, p. 7).

Thereafter, after representing its search was adequate and complete, the VA made two supplemental releases to CREW that included for the first time a copy of the March 20, 2008 Perez email.  But, as this Court found, the VA "did not file a declaration or otherwise provide any evidentiary explanation about the new release or describe the search that had produced it." Opinion, December 15, 2011, p. 6 (Dkt. 37).  On April 8, 2010, the VA released an additional 314 pages of documents with some redactions, and again provided no explanation for where and how these documents were located.  *Id.*

On March 31, 2010, Ronald Klavohn, an official with the VA's Office of Information and Technology, executed a declaration for use in this case, which the VA belatedly submitted with its renewed motion for summary judgment filed August 3, 2010.  (Dkt. 36-3)  The VA did not provide either the Court or CREW with the Klavohn Declaration prior to filing it with the VA's summary judgment motion on August 3, 2010, despite the evidentiary issues the VA's previous filings had raised.

Substantively, the Klavohn Declaration provided a new explanation of the results of the electronic search the VA conducted in this case -- an explanation that directly contradicts that previously provided by John Livornese.  According to Mr. Klavohn, under normal operations, the VA selects and saves a back-up tape once during a month, which it then typically retains for a year before reuse.  This saved back-up tape is used for disaster recovery in case of system failure and for restoring files that are accidentally deleted.  Klavohn Declaration, p. 15, ¶ 7.  Mr. Klavohn stated further at the time the VA conducted an electronic search for records responsive to CREW's FOIA request, the earliest available back-up tape was dated December 9, 2008, and that no monthly back-up tapes were created between January and November 2008.  *Id.*

Even without knowledge of this new revelation that normal operations in saving back-up tapes had been suspended during the time period relevant to this case, the Court on its own initiative determined the case was not in a posture for resolving summary judgment motions.  As a result, the VA withdrew its motion on May 27, 2010. Dkt. 32.

In light of the evidence in the Livornese Declaration that accompanied the now withdrawn summary judgment motion suggesting the VA had destroyed electronic records potentially responsive to CREW's FOIA request, CREW sought to depose Mr. Livornese.  The VA moved for a protective order, again failing to disclose to the Court the agency had additional evidence contained in Mr. Klavohn's declaration.  On July 14, 2010, the Court denied the VA''s motion and ordered the deposition of Mr. Livornese to proceed.  Dkt. 35.

That deposition took place on July 23, 2010.  At no point during this process did the VA make public the existence of the Klavohn Declaration or the new evidence it contained.  As a direct result of this failure, CREW was unable to ask Mr. Livornese questions about this new information.

On August 3, 2010, the VA renewed its motion for summary judgment, which included for the first time the declaration from Ronald Klavohn dated March 31, 2010.  With its subsequent reply, filed on October 1, 2010, the VA included six new declarations asserting yet more additional facts in an effort to respond to CREW's opposition.  As a result of this new evidence, the Court permitted additional briefing.  In addition, on April 11, 2011, the VA filed a notice of supplemental release stating it had belatedly found an April 8, 2008 email authored by Ms. Perez that was responsive to CREW's request that the agency was releasing.  According to the VA, the email was found in the mailbox of one of its recipients, not the mailbox of Ms. Perez.  (Dkt. 50)

On December 15, 2012, the Court denied the VA's renewed motion for summary judgment and ordered that CREW be allowed to redepose John Livornese and depose Ronald Klavohn at the VA's expense. CREW took the deposition of Mr. Klavohn on January 26, 2012, and of Mr. Livornese on February 16, 2012. Thereafter, on April 23, 2012, the VA filed its third motion for summary judgment based once again on an assertion the VA had conducted an adequate search and produced all responsive, non-exempt documents. On September 24, 2014 the Court ruled on the VA's motion granting summary judgment, but ordered the VA to show cause why sanctions should not be imposed on it for multiplication of proceedings. Dkt. 73. In the opinion the Court again stated it is deeply troubled by the VA's litigation conduct in this case, because inaccurate declarations were left uncorrected for months despite having executed declarations in hand that addressed the inaccuracies, apparently as a litigation tactic. Dkt. 73, p. 14.

## **LEGAL STANDARD**

The Freedom of Information Act ("FOIA") provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case...in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The attorney-fee inquiry is divided into two prongs: fee eligibility and fee entitlement. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011). To be eligible, a plaintiff must "substantially prevail," and, if that standard is met, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff should be awarded fees and costs. *Id.*

"FOIA plaintiffs [are] eligible for a fee award if the lawsuit substantially caused the agency to release the requested records," *Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C.

Cir. 2010). The relief need not be court-ordered; "a voluntary or unilateral change in position by

the agency," makes a plaintiff eligible "if the complainant's claim is not insubstantial." 5 U.S.C.

§ 552(a)(4)(E)(ii).


## ARGUMENT

**1. CREW Meets FOIA's Eligibility Requirement for an Award of Attorneys Fees and**

**Costs.**

A.  Through This Litigation CREW Vindicated Its Entitlement to a Fee Waiver.

As noted, prior to CREW filing suit in this case, the VA had flatly denied CREW's

request for a public interest waiver of search and duplication fees for CREW's request, and had

failed to act on an administrative appeal of the denial within the statutory time period.  The VA

denied the fee waiver despite the legal standard for fee waivers, which requires that they be

liberally granted to facilitate the informational purpose of FOIA, especially to public interest

groups.   The D.C. Circuit Court of Appeals has recognized that Congress amended FOIA

specifically to ensure that public interest fee waivers be "liberally construed in favor of waivers

for noncommercial requesters".  *Judicial Watch, Inc.* v. *Rossotti*, 326 F.3d 1309,1312 (D.C.Cir.

2003). CREW is a noncommercial public interest requester and thus falls in the category of

public interest groups favored for a fee waiver.  *Campbell* v. *U.S. Dept. of Justice*, 164 F.3d

20,35 (D.C.Cir. 1998).

Because the VA had denied the fee waiver, the VA did not provide CREW and

responsive records under its  FOIA request.  Shortly after filing suit, CREW moved the court for

partial summary judgment on Claim 2 of its complaint seeking a public interest fee waiver.  Dkt

4.  In the VA's response to CREW's motion for partial summary judgment, in belated

recognition of the high public interest in the requested records, the VA reversed course and granted CREW the public interest fee waiver it had sought in its complaint.  This cleared the way for search and release of requested records.  Dkt 7.  Two weeks after granting the fee waiver the VA began for the first time to release responsive records to CREW.

Thus CREW prevailed in this litigation on the fee waiver issue, Claim 2 of its complaint, directly resulting in release of over a thousand pages of responsive records and five CD-ROMs with few redactions in this case.  Opinion, Dkt. 73 (page 7 contains a list of releases of records). A requester who prevails on the fee waiver issue is deemed to substantially prevail and can recover attorneys' fees for the case under the FOIA.  *Wilson* v. *Dept. of Justice*, No. 87-2415 (D.D.C. Sept. 12, 1989) (Memorandum opinion, copy attached hereto as Exhibit 1); *See Weisberg* v. *Dep't of Justice*, 848 F.2d 1265,1268-69 (D.C.Cir. 1988) (successfully seeking a fee waiver in litigation in a FOIA case would meet the "substantially prevail" standard, but the district court did not find those facts in the case).

B.  As A Result Of This Litigation The VA Was Forced To Conduct An Adequate Search And Release Thousands Of Pages Of Responsive Documents.

Once the fee waiver was granted, the VA began producing responsive documents, although remarkably the email from Ms. Perez was not part of that production.  On September 23, 2009, the VA filed its first motion for summary judgment, in which it claimed to have performed an adequate search and produced to CREW all responsive records (Dkt. 16).  In opposing this motion, CREW identified the myriad ways in which the agency's search was inadequate including, *inter alia*, the VA's failure to search for electronic records dating back to March 20, 2008, the date of Ms. Perez's revelatory email.  In response, the VA claimed an inability to recover emails created before December 9, 2008, due to the VA's regular rotation of

10

backup tapes.  As part of its explanation of this practice, the VA offered a supplemental declaration from John Livornese revealing the VA had destroyed – by writing over – backup tapes pre-dating December 9, 2008.  (Dkt. 21-2, p. 7).

Thereafter, after representing its search was adequate and complete, the VA made two supplemental releases to CREW that included for the first time a copy of the March 20, 2008 Perez email.  But, as this Court found, the VA "did not file a declaration or otherwise provide any evidentiary explanation about the new release or describe the search that had produced it." Opinion, December 15, 2011, p. 6 (Dkt. 37).  On April 8, 2010, the VA released an additional 314 pages of documents with some redactions, and again provided no explanation for where and how these documents were located.  *Id.*

On March 31, 2010, Ronald Klavohn, an official with the VA's Office of Information and Technology, executed a declaration for use in this case, which the VA belatedly submitted with its renewed motion for summary judgment filed August 3, 2010.  (Dkt. 36-3)  The VA did not provide either the Court or CREW with the Klavohn Declaration prior to filing it with the VA's summary judgment motion on August 3, 2010, despite the evidentiary issues the VA's previous filings had raised.

Substantively, the Klavohn Declaration provided a new explanation of the results of the electronic search the VA conducted in this case -- an explanation that directly contradicts that previously provided by John Livornese, as more fully described in the factual background above.

Even without knowledge of this new revelation that normal operations in saving back-up tapes had been suspended during the time period relevant to this case, the Court on its own initiative determined the case was not in a posture for resolving summary judgment motions.  As a result, the VA was forced to withdraw its motion on May 27, 2010. Dkt. 32.

In light of the evidence in the Livornese Declaration that accompanied the now withdrawn summary judgment motion suggesting the VA had destroyed electronic records potentially responsive to CREW's FOIA request, CREW sought to depose Mr. Livornese.  The VA moved for a protective order, again failing to disclose to the Court the agency had additional evidence contained in Mr. Klavohn's declaration.  CREW opposed the VA's motion for a protective order and on July 14, 2010, the Court denied the VA's motion and ordered the deposition of Mr. Livornese to proceed. Dkt. 35.

That deposition took place on July 23, 2010.  At no point during this process did the VA make public the existence of the Klavohn Declaration or the new evidence it contained.  As a direct result of this failure, CREW was unable to ask Mr. Livornese questions about this new information.

On August 3, 2010, the VA renewed its motion for summary judgment, which included for the first time the declaration from Ronald Klavohn dated March 31, 2010.  With its subsequent reply, filed on October 1, 2010, the VA included six new declarations asserting yet more additional factual assertions in an effort to respond to CREW's opposition.  As a result of this new evidence, the Court permitted additional briefing.  In addition, on April 11, 2011, the VA filed a notice of supplemental release stating it had belatedly found an April 8, 2008 email authored by Ms. Perez that was responsive to CREW's request that the agency was releasing.  According to the VA, the email was found in the mailbox of one of its recipients, not the mailbox of Ms. Perez.  (Dkt. 50)

On December 15, 2012, the Court denied the VA's renewed motion for summary judgment and ordered that CREW be allowed to redepose John Livornese and depose Ronald Klavohn at the VA's expense.  Thus CREW prevailed on its arguments in opposition to the VA's

renewed motion for summary judgment.  CREW took the deposition of Mr. Klavohn on January

26, 2012, and of Mr. Livornese on February 16, 2012.  Thereafter, on April 23, 2012, the VA

filed its third motion for summary judgment based once again on an assertion the VA had

conducted an adequate search and produced all responsive, non-exempt documents.  On

September 24, 2014 the court ruled on VA's motion granting summary judgment but ordered VA

to show cause why sanctions should not be imposed upon it for multiplication of proceedings.

Dkt. 73.  In the opinion the court again stated it is deeply troubled by the VA's litigation conduct

in this case, because, apparently as a litigation tactic, inaccurate declarations were left

uncorrected for months despite having executed declarations in hand that addressed the

inaccuracies.  Dkt. 73, p. 14.

Given this conduct and the eventual release to CREW of a significant number of

responsive documents, CREW has substantially prevailed at every turn throughout this litigation.

CREW obtained by motion a public interest fee waiver of search and duplication fees, paving the

way for the release of over a thousand pages of records and five CD-ROM's with few redactions.

CREW's objections required the VA to withdraw its first inadequate motion for summary

judgment, after which the agency made two supplemental releases of new documents not

supported by declarations, and a third release of over 300 pages of responsive records.  Based on

the factual issues CREW identified, CREW was afforded discovery, with the Court denying the

VA's motion for protective order.  CREW deposed former VA John Livornese.  Based on

CREW's opposition, the Court denied the VA's renewed motion for summary judgment, and

granted CREW's request for additional discovery in light of what the Court determined to be

deeply troubling litigation conduct in the case.  Most recently, the Court has ordered the VA to

show cause why it should not be sanctioned for multiplication of proceedings.

Prior to CREW filing suit, the VA had made no releases of responsive records and was refusing to grant CREW a fee waiver.  As a direct result of CREW's pursuit of this litigation, the VA made repeated releases and supplemental releases of responsive records amounting to over a thousand pages and five CD-ROM's with few redactions, at no cost to CREW.  There can be no serious question CREW has substantially prevailed and is eligible for an award of attorneys' fees and costs in this case.

**2.  CREW meets the entitlement test for an award of attorneys' fees and costs in this case.**

CREW also satisfies the second prong of the attorney's fees analysis, making it both eligible for, and entitled to a fee award here.  In determining whether a substantially prevailing FOIA litigant is entitled to attorneys' fees, a court must consider "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents."  *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (citations omitted).  The second and third factors are often considered together. *Id.*  "No one factor is dispositive, although the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." *Id.*  Accordingly, the court evaluates the released records under each of these tests and balances the four factors to determine fee entitlement.

**a. Public Benefit**

In assessing the public benefit derived from the case, the Court must consider two factors: (1) the effect of the litigation for which fees are requested, and (2) the potential public value of the information sought. *See id.* (citing *Chesapeake Bay Found. v. USDA*, 108 F.3d 375, 377

31 (D.C. Cir. 1997)); *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995); *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1095, 1093–94)).  The public-benefit prong "speaks for an award of [attorney's fees] where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices."  *Fenster v. Brown*, 617 F.2d 740, 744 (D.C.Cir. 1979) (quoting *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978)).

    In this case, as noted in the Background section above, CREW has pursued information related to a leaked e-mail from the team leader of a PTSD unit at a VA facility in Texas.  The leaked e-mail encouraged recipients to avoid diagnoses of PTSD in veterans for reasons of cost, and gave evidence to the concerns of many veterans that PTSD diagnosis and treatment for returning veterans were being shortchanged in the interest of cost savings.  The Perez e-mail resulted in congressional hearings and substantial news coverage, as noted in the Court's opinion dated December 15, 2011, Dkt. 54.  In the context of a deployment of  large numbers of U.S. service personnel in two conflict zones, resulting in skyrocketing numbers of cases of PTSD, and given the content of the leaked e-mail, CREW pursued information about PTSD diagnosis and treatment.  As noted previously, the VA provided no records until CREW filed suit and moved successfully for partial summary judgment on its fee waiver request, and only produced the Perez e-mail after CREW opposed the VA's summary judgment motion, arguing, *inter alia*, the search was inadequate because that e-mail had not been produced.

    CREW has posted all the documents it has received from the VA on the internet for the public and veterans to review.  CREW has actively coordinated with veterans groups concerned about the PTSD treatment issue.  The documents released to CREW and posted by it on the internet contribute significantly to the fund of knowledge of the public on the issue of VA

15

policies related to PTSD treatment.   At the same time, as explained below, the documents were not sought for, and serve no commercial interest of CREW.

Moreover, the serious problems with the VA and its treatment of veterans continue to be a subject of great public interest.  The media and Congress continue to focus on the myriad problems with how the VA has dealt with PTSD.  The White House intruder who most recently jumped the fence and entered the White House is reported to be a veteran suffering from PTSD.  Further, the VA has been the subject of investigations and allegations of a cover-up involving substandard care for veterans, and the VA Secretary recently resigned under fire.  (Dkt. 72).  Through this litigation and its success in securing more than one thousand of pages of responsive documents and five CD-ROMs with few redactions, CREW has added significantly to the public knowledge on this issue.

Additionally, CREW's efforts to hold the VA accountable in this case for its record searches and electronic records search policies serve a strong public interest.  The Court has stated it is deeply troubled by the VA's litigation conduct in this case, and has ordered the VA to show cause why it should not be sanctioned for that conduct.  Given this context, CREW's pursuit of this case – despite the myriad obstacles the VA put in its path and the VA's recent history of denial and cover-up -- to hold the VA accountable serves a strong public interest.

Accordingly, the public benefit factor weighs heavily in favor of an award of fees and costs to CREW.

### b. Commercial Benefit to the Plaintiff and Nature of the Plaintiff's Interest

"[W]hen a [FOIA] litigant seeks disclosure for a commercial benefit or out of other personal motives, an award of attorney's fees is generally inappropriate." *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992).  Here, CREW's purpose — to

obtain and disseminate information of interest to the public — is non-commercial and public interest oriented and thus favors an award of fees. Moreover, another court in this district has recently found that CREW has noncommercial objectives oriented toward the public interest that favor an award of attorneys' fees. *CREW* v. *Fed. Elections Comm'n,* Civil No. 11-951 D.D.C., opinion Sept. 5, 2014, page 9.

Plaintiff CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of those officials. CREW seeks to empower citizens to have an influential voice in government decisions and in the governmental decision-making process through the dissemination of information about public officials and their actions. To advance its mission, CREW uses a combination of research, litigation and advocacy. As part of its research, CREW uses government records made available to it under the FOIA. CREW has invested considerable organizational resources in pushing the U.S. government to take ethics issues seriously. CREW monitors closely the laws and rules applicable to government agencies. Dkt. 4-1.

CREW's non-profit and non-partisan activities in seeking and publicizing information of interest to the public on current issues of government performance fall within the scholarly and public-interest oriented goals promoted by FOIA. The "commercial benefit" and "nature of interest" elements weigh in favor of granting CREW's motion for attorneys' fees.

**c. Reasonableness of the Agency's Withholding of the Requested Documents**

The final element of the fee entitlement analysis concerns "whether the agency's opposition to disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Davy,*

550 F.3d at 1162 (citations omitted).  The government carries the burden of showing it had a

colorable or reasonable basis for not disclosing the material until after the plaintiff filed suit.  *Id.*

at 1163.

  In this case, as previously noted, the VA denied CREW a public interest fee waiver

despite CREW's obvious entitlement to such a waiver.  The VA did not process any responsive

records until CREW filed suit and moved successfully for partial summary judgment on the fee

waiver.  In its responsive pleading, the VA, without explanation, abruptly stated it was reversing

its prior decision and granting CREW a public interest fee waiver.  The timing makes it clear the

VA was acting in light of CREW's pending motion.  Two weeks later the VA made its first

release of records in this case, followed by several subsequent releases totaling over a thousand

pages of responsive records and five CD-ROMs with few redactions, again actions tied directly

to CREW's litigation of its FOIA request.

  As demonstrated by the history of this case, the VA repeatedly has made late

supplemental releases under pressure of  arguments from CREW pointing out the myriad ways in

which the agency has fallen far short of its obligations under the FOIA.  These actions

demonstrate just how premature the VA's many summary judgment motions have been, made

well before the agency conducted an adequate search and produced all responsive, non-exempt

documents.     Further, and tellingly, as this Court has concluded,  the VA presented in support

of its motions declarations containing blatantly inaccurate information.  Even with knowledge of

these inaccuracies, and possession of information demonstrating the falsehoods in its

declarations, the VA failed to affirmatively withdraw or correct the declarations.  As a result,

both the Court and CREW relied on inaccurate information, a reliance of which the VA was well

aware.  *See* Dec. 15, 2011 opinion, Dkt. 54; Sept. 24, 2014 opinion p.p 14-15.   There is more

than good cause for this Court to be deeply troubled by the VA's litigation conduct in this case

the VA's conduct throughout has been unreasonable, recalcitrant, and often obdurate. Not only

does this conduct justify a sanction, but it underlines just how unreasonable the VA's

withholdings have been. The fourth factor therefore strongly favors an award of attorneys' fees

and costs to CREW.

In sum, all four factors of the entitlement test favor an award of fees and costs to CREW

in this case, and therefore CREW is both eligible for and entitled to an award.

**3. Calculation of the award of fees and costs.**

CREW has submitted with this motion declarations of its counsel and itemizations of

time reasonably spent working on this case. Exhibits 2 and 3. CREW seeks compensation at an

hourly rate determined by the "Laffey Matrix," which sets forth hourly rates for attorneys'

services adjusted annually. Courts in this district have used a Laffey Matrix updated by the legal

services component of the Consumer Price Index in the award of attorneys' fees under the FOIA.

*Salazar* v. *District of Columbia*, 123 F. Supp. 2d 8, 13 (D.D.C. 2000), and subsequent fee awards

in that case; *Eley* v. *District of Columbia*, No. 11-309 (D.D.C., opinion dated November 20,

2013, p. 14) (use of the updated Laffey Matrix is appropriate); *CREW* v. *Dep't of Justice*, Civil

No. 11-0754 (D.D.C. opinion dated August 4, 2014, page 10) (court reiterates that the updated

Laffey Matrix is to be applied to CREW fee petition in a FOIA case). A copy of the updated

Laffey Matrix used in those cases and used to calculate the fees in this case is attached hereto as

Exhibit 4. This updated Laffey Matrix is described in the declaration of economist Michael

Kavanaugh that was relied on by this court in the *CREW* v. *Dep't of Justice* decision to use the

updated index. D.D.C. Civil No. 11-0754, Dkt. 55-11.

In determining the fee award, the number of hours reasonably worked on this case by counsel is multiplied by the applicable hourly rates recognized on the Laffey Matrix for the experience level of counsel.  Summaries of these calculations are contained at the end of Mr. Alcorn's itemization at page 19 of Exhibit 2.  This calculation results in the lodestar amount of the award of fees.  *Hensley* v. *Eckerhart*, 461 U.S. 424,434 (1983).  Costs incurred in the case are added to this amount to determine the total amount of the award of attorneys' fees and costs, as described in the calculation on pages 19-20 of Mr. Alcorn's itemization.

As previously noted, plaintiff has obtained very substantial relief on its claims by prevailing on the public interest fee waiver, resulting in release of over a thousand pages of records and five CD-ROMs with only a few redactions.  Further, CREW has compelled repeated additional searches that have uncovered key unreleased records, such as the Norma Perez email.  CREW's oppositions to the government's multiple summary judgment motions have caused the VA to withdraw one motion for summary judgment and the Court to deny a second, resulting in additional searches and releases of records.  Further, CREW prevailed over the VA's motion for a protective order and was permitted to take discovery in the form of depositions on three occasions on the VA's search to clarify confusing and contradictory statements in the VA's declarations.  It should be noted that the VA's resistant and obstructive conduct in the case has increased the work required on behalf of CREW at every stage of the case.   Where, as here, a FOIA plaintiff has obtained excellent results and prevailed on its claims it is entitled to an award of its fees and costs in the case without reduction.  *Hensley* v. *Eckerhart*, 461 U.S. 424,440 (1983).

CREW's counsel Daniel S. Alcorn in his attached declaration states that he is an experienced FOIA counsel who has served as the primary counsel in the case since it was filed.  Mr. Alcorn

states that he has been awarded fees by this court in previous FOIA cases.  He states he reviewed

his itemization of time and deleted time entries that were not reasonably necessary such as

citation and withdrawal of a case decision later withdrawn by the issuing court as part of a

settlement of the case.  Alcorn Declaration, paras. 4,5.  The work described in the itemization

was reasonably expended for the effective representation of CREW's interests in this matter and

is not excessive, redundant or otherwise unnecessary.

　　　　As evidenced by the attached itemizations and declarations, CREW's counsel Daniel S.

Alcorn has worked 313.1 hours on this case since 2008 which multiplied by the appropriate

Laffey matrix rate as shown on page 19 of the itemization (Exhibit 2) results in attorneys fees of

$224,054.04.  CREW counsel Anne Weismann has worked 49.46 hours on this case since 2008

which multiplied by the appropriate Laffey Matrix rates as shown on page 19 of Exhibit 2 results

in attorneys fees of $35,673.35.  Costs as detailed in Ms. Weismann's itemization total $747.04

and are summarized on page 20 of Exhibit 2.  In that plaintiff CREW is both eligible for and

entitled to an award of fees and costs in this case, CREW prays that the court grant plaintiff's

motion and award attorneys fees in the amount of $259,727.39 together with costs in the amount

of $747.04 to be paid by defendant U.S. Department of Veterans Affairs.

　　　　　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　 _/s/ Daniel S. Alcorn_____
　　　　　　　　　　　　　　　　Daniel S. Alcorn
　　　　　　　　　　　　　　　　(D.C. Bar No.  383267)
　　　　　　　　　　　　　　　　Counsel for Plaintiff CREW
　　　　　　　　　　　　　　　　1335 Ballantrae Lane
　　　　　　　　　　　　　　　　McLean, VA  22101
　　　　　　　　　　　　　　　　(703) 442-0704

　　　　　　　　　　　　　　　　Anne L. Weismann
　　　　　　　　　　　　　　　　(D.C. Bar No. 298190)
　　　　　　　　　　　　　　　　 Citizens for Responsibility and
　　　　　　　　　　　　　　　　　　　Ethics in Washington

409 7th Street, N.W.
Suite 300
Washington, D.C.  20004
Phone: (202) 408-5565
Fax: (202) 588-5020